IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SUBPOENAS SERVED ON LLOYDS BANKING GROUP PLC; LLOYDS AMERICA SECURITIES CORPORATION; LLOYDS BANK CORPORATE MARKETS PLC; THE CANADIAN IMPERIAL BANK OF COMMERCE; CIBC BANK U.S.A.; BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.; WELLS FARGO & COMPANY; WELLS FARGO BANK, N.A.; THE GOLDMAN SACHS GROUP, INC.; GOLDMAN SACHS & CO. LLC; GOLDMAN SACHS INTERNATIONAL; MORGAN STANLEY; MORGAN STANLEY & CO. LLC; MORGAN STANLEY & CO. INTERNATIONAL PLC; MIZUHO BANK, LTD.; MIZUHO AMERICAS LLC; MIZUHO SECURITIES USA LLC; CRÉDIT AGRICOLE CIB; CREDIT AGRICOLE SECURITIES (USA) INC.; CREDIT AGRICOLE AMERICA SERVICES, INC.; SOCIÉTÉ GÉNÉRALE S.A.; SG AMERICAS SECURITIES, LLC; BANCO SANTANDER, S.A.; AND SANTANDER HOLDINGS USA, INC.: | Misc. Case No. 1:21-mc-376 (Arising from Case No. 1:17-cv-00582-CKK in the United States District Court for the District of Columbia, pending on appeal in Case No. 20-7091 in the United States Court of Appeals for the District of Columbia Circuit) |
| UKRAINE, | |
| Petitioner, | |
| -against- | |
| PAO TATNEFT, | |
| Respondent. | |

**MEMORANDUM OF LAW IN SUPPORT OF UKRAINE'S
MOTION TO QUASH THIRD-PARTY SUBPOENAS**

Ukraine respectfully moves to quash or, alternatively, to modify, identical subpoenas issued by Tatneft's counsel to twenty-five banks demanding that the recipients produce a wide variety of documents purportedly sought in aid of enforcement of the judgment in *Pao Tatneft v. Ukraine*, 1:17-cv-00582-CKK (D.D.C.), which is currently on appeal.  Ukraine further moves the Court to award Ukraine reasonable attorneys' fees incurred in relation to this motion.  The subpoenas demand irrelevant information related to the finances of entities that are not liable under the judgment and whose assets cannot be used to satisfy the judgment.  Moreover, they are overbroad, impose an undue burden, and require production of confidential and sensitive information contrary to the demands of comity.  For these reasons, the subpoenas should be quashed and reasonable attorneys' fees should be awarded to Ukraine.

## I.    FACTS

In the underlying litigation, Ukraine is appealing a judgment obtained by Tatneft that confirms an arbitral award against Ukraine.  *Pao Tatneft v. Ukraine*, 1:17-cv-00582-CKK, Dkts. 61–62 (D.D.C. Jan. 11, 2021).  On February 23, 2021, while the appeal was pending, Tatneft attempted to serve extremely broad discovery requests on Ukraine, purportedly in aid of enforcement under Federal Rule of Civil Procedure 69.  On March 22, 2021, Tatneft's counsel, Cleary Gottlieb, informed Ukraine's counsel that, also pursuant to Rule 69, it would cause third-party subpoenas to be served on five banking entities.[1]  On March 23, 2021, Tatneft's newly added counsel, Binder & Schwartz, informed Ukraine's counsel that, pursuant to Rule 69, it would cause third-party subpoenas to be served on an additional twenty banking entities.[2]

---

[1] Lloyds Banking Group plc, Lloyds America Securities Corporation, Lloyds Bank Corporate Markets plc, the Canadian Imperial Bank of Commerce, and CIBC Bank U.S.A.  Ex. A, Notice of Subpoenas by Cleary Gottlieb Steen & Hamilton LLP ("Cleary Notice") at 1.

[2] Bank of America Corporation; Bank of America, N.A.; Wells Fargo & Company; Wells Fargo Bank, N.A.; The Goldman Sachs Group, Inc.; Goldman Sachs & Co. LLC; Goldman Sachs International; Morgan Stanley; Morgan Stanley & Co. LLC; Morgan Stanley & Co. International plc; Mizuho Bank, Ltd.; Mizuho Americas LLC; Mizuho Securities USA LLC; Crédit Agricole CIB; Credit Agricole Securities (USA) Inc.; Credit Agricole America Services,

Each subpoena includes an identical and extraordinarily broad definition of the term "Ukraine" that finds no support in United States or international law to include "the Respondent Ukraine, as well as its agencies, instrumentalities, ministries, political subdivisions, representatives, assigns, and the Identified State Controlled Entities, and all other Persons acting or purporting to act for or on Ukraine's behalf, whether or not authorized to do so." Ex. A, Cleary Notice, Schedule A at 3; Ex. B, Binder Notice, Schedule A at 3. "Identified State Controlled Entities" are defined to include:

1. The National Bank of Ukraine;

2. JSC CB PrivatBank;

3. JSC State Export-Import Bank of Ukraine ("Ukreximbank");

4. JSB UkrGasBank;

5. JSC State Savings Bank of Ukraine ("Oschadbank");

6. SC Ukroboronprom;

7. NJSC Naftogaz of Ukraine;

8. Naftogaz Trading Europe S.A.;

9. State Aviation Enterprise Ukraine;

10. State Enterprise Ukrainian Aviation and Transport Enterprise ("Khoriv-AVIA");

11. The National Nuclear Energy Generating Company of Ukraine ("Energoatom");

12. PJSC Centrenergo;

13. State Enterprise Plant Electrotyazhmash;

14. SE Ukrkosmos;

15. JSC Ukrainian Railways;

---

Inc.; Société Générale S.A.; SG Americas Securities, LLC; Banco Santander, S.A.; and Santander Holdings USA, Inc. Ex. B, Notice of Subpoenas by Binder & Schwartz LLP ("Binder Notice") at 1.

16. State Enterprise Ukrainian Sea Ports Authority;

17. PJSC Ukrainian Danube Shipping Company;

18. LTD JSSC Black Sea Shipping Company ("BLASCO"); and

19. PJSC State Food and Grain Corporation of Ukraine.

Ex. A, Cleary Notice, Schedule A at 2–3; Ex. B, Binder Notice, Schedule A at 2–3.

After defining "Ukraine" to include numerous non-parties (individuals and entities) in addition to "the Respondent Ukraine," each subpoena makes the following document requests:

1. "All Documents and Communications Concerning any Accounts maintained outside the territory of Ukraine in whole or in part in the name of UKRAINE, beneficially held in whole or in part by UKRAINE, for which UKRAINE is a signatory, or through which funds are transferred by or to UKRAINE, either in New York or any of Your branches outside New York." Ex. A, Cleary Notice, Schedule A at 7; Ex. B, Binder Notice, Schedule A at 7.

2. "Documents sufficient to identify the current account balance, currency, transaction history, and as-of date for all Accounts identified in response to Document Request No. 1." Ex. A, Cleary Notice, Schedule A at 7; Ex. B, Binder Notice, Schedule A at 7.

3. "All Documents and Communications evidencing or Concerning UKRAINE's ownership interests in any Accounts identified in response to Document Request No. 1." Ex. A, Cleary Notice, Schedule A at 7; Ex. B, Binder Notice, Schedule A at 7.

4. "All Documents and Communications Concerning the issuance of any securities or bond offerings outside the territory of Ukraine in which UKRAINE participated or

expects to participate as an issuer or seller in the period from January 1, 2014, to the present, including any agreements related to fiscal agent, trustee, or paying agent relationships." Ex. A, Cleary Notice, Schedule A at 7; Ex. B, Binder Notice, Schedule A at 7.

5. "Documents sufficient to identify, for any offerings identified in connection with Document Request No. 4, the (a) type of security or bond, (b) the issuer, (c) the place(s) of issuance, (d) the date(s) of issuance, (e) the underwriter, and (f) the monetary value or other measure of amount." Ex. A, Cleary Notice, Schedule A at 8; Ex. B, Binder Notice, Schedule A at 8.

6. "All Documents and Communications Concerning past or planned wire transfers or other transfers of capital made by UKRAINE in connection with any securities or bond offerings, including but not limited to transfers involving UKRAINE's: (i) redemption payments, (ii) interest payments, (iii) purchase payments, and (iv) cancellation payments, and sufficient to identify the bank or financial institution and account from which any such payments was made." Ex. A, Cleary Notice, Schedule A at 8; Ex. B, Binder Notice, Schedule A at 8.

7. "All Documents and Communications Concerning UKRAINE's intention to redeem, purchase or cancel any outstanding securities or bonds in which UKRAINE was the seller or issuer." Ex. A, Cleary Notice, Schedule A at 8; Ex. B, Binder Notice, Schedule A at 8.

While each of these requests is addressed, directly or by reference to the scope of another request, at information concerning "UKRAINE," the subpoenas define that term so broadly that it sweeps

in numerous entities and people that are legally distinct from Ukraine and that are not liable under the judgment against Ukraine.

These requests are "continuing in nature, requiring supplemental production" of documents belatedly identified as responsive.  Ex. A, Cleary Notice, Schedule A at 5; Ex. B, Binder Notice, Schedule A at 5.  Unless otherwise specified, they cover "Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect from January 1, 2020, through the present."  Ex. A, Cleary Notice, Schedule A at 6–7; Ex. B, Binder Notice, Schedule A at 6–7.

On March 24, 2021, Ukraine timely objected to the subpoenas as irrelevant and overbroad in letters served on Cleary Gottlieb and on Binder & Schwartz.  Ukraine sent its written objections with a request for a reply indicating counsel's agreement to narrow the subpoenas.  However, Tatneft's counsel has not responded concerning its next steps.  In light of Tatneft's historically aggressive litigation tactics, this failure to reply carries the implicit threat of motions to compel strategically timed to detract from counsel's representation of Ukraine in a related matter against another affiliated Tatar party represented by Cleary Gottlieb, including at a seven-day evidentiary hearing next month.  Thus, Ukraine is compelled to address the matter preemptively by moving to quash the subpoenas.

## II.    ARGUMENT

Generally, pursuant to Rule 45(d)(3)(A), a court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter," "subjects a person to undue burden," or "fails to allow a reasonable time to comply."  Fed. R. Civ. P. 45(d)(3)(A).  Pursuant to Rule 45(d)(3)(B)(i), a court may also quash or modify the subpoenas "to protect a person subject to or affected by a subpoena" if it requires disclosing a trade secret or other confidential research, development, or commercial information."  Fed. R. Civ. P. 45(d)(3)(B)(i).

Rule 69(a)(2) provides that post-judgment discovery must be "*[i]n aid* of" "execution." Fed. R. Civ. P. 69(a)(2) (emphasis added). Accordingly, post-judgment discovery that is unrelated to execution and cannot reasonably lead to execution is not provided for by the Rules. *NML Capital v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) ("The scope of discovery under Rule 69(a)(2) is constrained principally in that it must be calculated to assist in collecting on a judgment").

A party may seek to quash a third-party subpoena "where the subpoena directly implicates the party's privilege or rights," including where the movant has "a real and defined interest" in the information at issue. *Albany Molecular Rsch., Inc. v. Schloemer*, 274 F.R.D. 22, 25 (D.D.C. 2011). Thus, where a subpoena served on non-party banks seeks information about a sovereign State's financial affairs, that State may "seek to quash the subpoenas on the grounds that the document requests are excessively broad and seek irrelevant private information." *Aurelius Cap. Partners v. Republic of Argentina*, 2013 WL 857730, at *2 (S.D.N.Y. Mar. 7, 2013). More generally, courts determining the appropriate scope of discovery account for "the demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation," providing "due respect for . . . any sovereign interest expressed by a foreign state." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987).

## A. The Subpoenas Seek Irrelevant, Unnecessary Information and Are Overbroad and Unduly Burdensome

Post-judgment discovery provided by Rule 69 must be "[i]n aid of the judgment or execution." Fed. R. Civ. P. 69(a)(2). Thus, "disclosure concerning the assets of a non-party is generally not contemplated." *GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, 2012 WL 1933558, at *5 (S.D.N.Y. May 22, 2012). Instead, Rule 69 discovery "must be limited to

information that relates to the judgment debtors, their assets or suspected transfers of their assets." *Jacobson v. Moller & Moller, Inc.*, 2007 WL 1989260, at *2 (E.D.N.Y. July 5, 2007); *see also Costomar Shipping Co. v. Kim-Sail, Ltd.*, 1995 WL 736907, at *3 (S.D.N.Y. Dec. 12, 1995) ("Generally, non-parties may only be examined about the assets of a judgment debtor and cannot be required to disclose their own assets.").

"The party seeking discovery bears the initial burden of proving the discovery is relevant[.]" *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017).

As mentioned above, the subpoenas define "Ukraine" to include separate entities and non-parties to the dispute and purport to require the banks to produce documents concerning these entities and people without any basis in United States or international law. Among those targeted by the subpoenas are Ukraine's "representatives," "assigns," 19 separate entities labeled in a conclusory manner as "State Controlled Entities," and "all other Persons acting or purporting to act for or on Ukraine's behalf, *whether or not authorized to do so*." Ex. A, Cleary Notice, Schedule A at 3; Ex. B, Binder Notice, Schedule A at 3 (emphasis added). This expansive definition bears little resemblance to the definition of "State" in Section 201 of the Restatement (Third) of Foreign Relations Law of the United States, which provides that "a state is an entity that has a defined territory and a permanent population, under the control of its own government, and that engages in, or has the capacity to engage in, formal relations with other such entities." Restatement (Third) of Foreign Relations Law of the United States, § 201 (1987). It also far exceeds the bounds of the definition of "foreign state" in Section 1603 of the Foreign Sovereign Immunities Act. Indeed, the breadth of Tatneft's definition of Ukraine is extraordinary: any Federal Express courier delivering this motion to quash would satisfy the definition of Ukraine. It follows that a New York

bank-subpoena recipient in which the courier has a bank account would be under a continuing obligation to disclose the courier's bank account and transactional information indefinitely—despite that the courier's funds cannot be used in satisfaction of any debt of Ukraine. Ex. A, Cleary Notice, Schedule A at 5; Ex. B, Binder Notice, Schedule A at 5.

Information concerning non-parties that are not liable for the judgment against Ukraine is irrelevant as it cannot be used to enforce the judgment. *See Aurelius*, 2013 WL 857730, at \*3 (holding that subpoena was overbroad and not appropriately "tailored to seek only information regarding assets that could realistically be seized by plaintiffs" based on its expansive definition of "Argentina"). Even corporations that qualify as government instrumentalities should presumptively be treated in accordance with their separate juridical status. *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba* ("*Bancec*"), 462 U.S. 611, 622–27 (1983); *see also* Restatement (Third) of Foreign Relations Law § 452 (1987) ("Nor can the obligation of the state be imputed to the instrumentality if the instrumentality was not itself engaged in the activity giving rise to the obligation."). A plaintiff can surmount a corporation's separate juridical status only by showing that it is a mere alter ego of the state that created it. *EM Ltd. v. Banco Cent. de la República Arg.*, 800 F.3d 78, 90 (2d Cir. 2015).

Although the alter ego doctrine can overcome the presumption that a duly incorporated instrumentality is separate from the state that incorporated it, "both Bancec and the FSIA legislative history caution against too easily overcoming the presumption of separateness." *EM Ltd. v. Banco Cent. de la República Arg.*, 800 F.3d 78, 90 (2d Cir. 2015). Thus, the presumption of separateness may be overcome only if "(1) the instrumentality 'is so extensively controlled by its owner that a relationship of principal and agent is created'; or (2) the recognition of an instrumentality's separate legal status would work a 'fraud or injustice.'" *Id.* (quoting *Bancec*,

462 U.S. at 629).  For separate juridical status to work "fraud or injustice," the foreign state must use the agency or instrumentality to commit a "'classic' abuse of corporate form."  *Letelier v. Republic of Chile*, 748 F.2d 790, 794 (2d Cir. 1984).

Tatneft's conclusory labelling of non-parties as state-controlled entities does not entitle it to discover irrelevant information about entities who have no liability under the judgment of the D.C. District Court.  Such discovery will not aid in enforcement of the judgment and so falls outside the scope of Rule 69.  For this reason alone, the subpoenas should be quashed.

But the requested information is irrelevant for other reasons.  For example, to the extent that the subpoenas seek information about bank accounts used by Ukraine's diplomatic and consular missions, it cannot lead to the discovery of information that can be used to enforce a judgment against Ukraine under the Vienna Convention on Diplomatic Relations, 23 U.S.T. 3227, and the Vienna Convention on Consular Relations, 21 U.S.T. 77.  In addition, to the extent that the subpoenas seek information about the assets of Ukraine's central bank or monetary authority, it cannot lead to the discovery of information that can be used to enforce a judgment against Ukraine under Section 1611 of the FSIA.

The temporal scope of the subpoenas is also impermissibly vague and overbroad.  By their terms, they seek documents "disseminated," "reproduced," "received," "obtained," "distributed," or "in effect" from January 1, 2020, through the present.  Ex. A, Cleary Notice, Schedule A at 6– 7; Ex. B, Binder Notice, Schedule A at 6–7.  The subpoenas also purport to capture documents created after the subpoenas were issued and reference a "continuing" duty of production.  Ex. A, Cleary Notice, Schedule A at 5; Ex. B, Binder Notice, Schedule A at 5.

What is more, even if Tatneft could satisfy its burden of showing that broad information requests from non-parties had some degree of tangential relevance, the subpoenas impose an undue

burden.  A response to the subpoenas would likely entail not only the burden of identifying responsive documents—no small feat given the broad definitions and time period set forth in the subpoena—but also the burden of identifying and asserting claims of protection under Ukrainian law.  In light of the minimal relevance of the documents, this burden is unjustified.  *See Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (finding undue burden and awarding attorneys' fees because request for information concerning a non-party was not relevant and necessary).

The breadth and generality of the third-party subpoenas, consistent with the sweeping discovery requests served on Ukraine, indicate that Tatneft has not identified any potentially attachable property of Ukraine, is not targeting information about specific assets, and is engaged in a simple fishing expedition.  The subpoenas should be quashed because they seek irrelevant information reaching beyond the scope of Rule 69, and also because they are unduly burdensome under Rule 45(d)(3)(A)(iv).  Because the subpoenas violate the obligation to "take reasonable steps to avoid imposing undue burden or expense," Ukraine requests an award of reasonable attorney's fees under Rule 45(d)(1).

**B.  The Subpoenas Require Disclosure of Confidential Information in Violation of Applicable Ukrainian Law and Treaty, Contrary to the Demands of Comity and to a Real and Defined Interest of Ukraine**

As noted above, courts account for a party's "real and defined interest" in the confidentiality of information requested by a subpoena, *Schloemer*, 274 F.R.D. at 25, including by evaluating "the demands of comity" and "any sovereign interest expressed by a foreign state," *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987).

Ukraine has a real and defined interest in the confidentiality of non-public information about its own finances and the finances of related but legally distinct entities such as its agencies,

instrumentalities, and organs.  For example, the National Bank of Ukraine engages in central banking functions relating to the maintenance of the country's monetary stability that are a sovereign activity not open to the public.  *Cf.* 28 U.S.C. § 1611(b)(1) (immunizing property of a central bank from attachment and execution).  In addition, bank accounts belonging to Ukraine's diplomatic and consular missions are used to engage in sovereign activities that can also be extraordinarily sensitive.  *Cf. Liberian E. Timber Corp. v. Gov't of Republic of Liberia*, 659 F. Supp. 606, 610 (D.D.C. 1987) (protecting accounts of a diplomatic mission under the FSIA as well as under diplomatic immunity and the Vienna Convention).

To the extent that Requests 4 to 7 seek information regarding Ukraine's issuance of sovereign bond offerings, there are restrictions on disclosure of such information, particularly at the preparatory stage.  To the extent that Request 4 seeks information regarding "agreements related to fiscal agent, trustee, or paying agent relationships," the disclosure of such information is typically protected by the confidentiality provisions of the relevant agreements. Ex. A, Cleary Notice, Schedule A at 7; Ex. B, Binder Notice, Schedule A at 7.

To the extent that Requests 1 to 3 seek information about bank accounts maintained by Ukraine "outside of the territory of Ukraine" but also outside of the territory of the United States, such disclosure would violate the bank secrecy laws of the countries whose bank secrecy regimes are substantively more protective than in the United States.[3]  A subpoena is not an exception to bank secrecy, and many jurisdictions have blocking statutes to block subpoenas emanating from

---

[3] For example, in France, bank secrecy is established in articles L. 511-33, L. 511-34, L. 571-4 of the Monetary and Financial Code (*Code Monétaire et Financier*), and its violation is punished under article 226-13 of the French Criminal Code by one year of imprisonment and a fine of 15000 euro.  In Switzerland, bank secrecy is enshrined in article 47 of the Swiss Federal Act of November 8, 2020, on Banks and Savings Banks, which punishes the violation of bank secrecy by up to three years of imprisonment or a fine, and the enrichment through the violation of bank secrecy by up to five years of imprisonment or a fine.  In Luxembourg, bank secrecy is established in article 41 of the Luxembourg law of April 5, 1993 on the Financial Sector.  The violation of bank secrecy is punished under article 458 of the Luxembourg Criminal Code by imprisonment from eight days to six months and a fine from 500 euro to 5000 euro.

more permissive common law jurisdictions.[4]  The subpoena indulges the assumption that outside of the United States, bank secrecy does not protect bank account and transactional information from disclosure and does not impose sanctions for such disclosure.  Ukraine has a real and defined interest in protection of its own banking and financial information, as well as the information of separate Ukrainian entities listed in the subpoena, in jurisdictions that afford such protection.  The appropriate scope of discovery should take into account the extent to which responsive information located outside the United States is protected by the laws of other jurisdictions.

The general sensitivity and confidentiality of records maintained by financial institutions finds recognition in a variety of U.S. and Ukrainian laws protecting the privacy interests of even ordinary consumers.  *See, e.g.*, 12 U.S.C. § 3403(a) ("No financial institution, or officer, employees, or agent of a financial institution, may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer except in accordance with the provisions of this chapter."); 15 U.S.C. § 6801 ("It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information."); Law of Ukraine No. 2121-III, art. 60 (defining bank secrets); Criminal Code of Ukraine, art. 231 (criminalizing disclosure of bank secrets).  Given concerns of comity and due respect for the sovereign interests of foreign states, these interests should be recognized as a particularly important consideration where discovery could reveal sensitive and confidential information about Ukraine's financial activities, as well as the financial activities carried out by Ukrainian non-parties that are legally distinct.

---

[4] *See, e.g.*, French Law No. 68-678 of July 26, 1968, on the Communication of Economic, Commercial, Industrial, Financial or Technical Documents and Information to Foreign Individuals or Legal Entities, as modified by French Law No. 80-538 of July 16, 1980, article 1 bis; Swiss Criminal Code, article 271(1).

The subpoenas should also be quashed because they violate Ukraine's real and defined interest in compliance with the applicable Ukrainian law and treaty. Requests 1 through 5 seek information concerning accounts and securities or bond offerings "outside the territory of Ukraine."[5] However, the Ukraine-Russian Federation bilateral investment treaty ("BIT") on which the arbitral award in the underlying dispute is based requires enforcement in Ukraine pursuant to Ukrainian law, rather than pursuant to the order of a foreign court using assets "outside the territory of Ukraine." *See* Ex. C, Russia-Ukraine BIT, art. IX (undertaking that each party will "execute such an award in conformity with its respective legislation"). The proper method of enforcing the award—which Tatneft has failed to pursue—would be to obtain a writ of execution from a Ukrainian court. *See Pao Tatneft v. Ukraine*, 1:17-cv-00582-CKK Dkt. 24-63 (D.D.C. July 25, 2017). In short, Ukraine's consent to arbitration in the BIT was conditioned on Tatneft's consent to enforce any award pursuant to Ukrainian law. Thus, Ukraine has a real and defined interest in preventing Tatneft from obtaining sweeping discovery of its worldwide assets, which Tatneft could only use to circumvent the terms of the BIT and the requirements of Ukrainian law.

Accordingly, the subpoenas should be quashed for reasons of comity and in light of Ukraine's interest in protecting the requested information from disclosure.

## III.   CONCLUSION

For these reasons, Ukraine respectfully requests an Order from the Court quashing or modifying Tatneft's third-party subpoenas and awarding Ukraine reasonable attorneys' fees incurred in relation to this motion.

---

[5] *See* Ex. A, Cleary Notice, Schedule A at 7–8 (limiting Request 1 to "Accounts maintained outside the territory of Ukraine," using Request 1 to define the scope of Requests 2 and 3, limiting Request 4 to "securities or bond offerings outside the territory of Ukraine," and using Request 4 to define the scope of Request 5); Ex. B, Binder Notice, Schedule A at 7–8 (same).

Dated: March 26, 2021                  Respectfully submitted,

<u>s/ Maria Kostytska</u>
Maria Kostytska (New York Bar # 4380101)
Winston & Strawn LLP
68 rue du Faubourg Saint Honoré
Paris 75008, France
(331) 53648282
(331) 53648220 (fax)
MKostystka@winston.com

Kelly A. Librera
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-4622
(212) 294-4700 (fax)
KLibrera@winston.com

*Counsel for Ukraine*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2021, I caused the foregoing document to

be served on counsel for Tatneft by Fed Ex at the following addresses:

Jonathan Blackman, Mark McDonald, Matthew Slater, Boaz Morag, Allison Kim
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006

Lauren K. Handelsman and Sarah A. Dowd
Binder & Schwartz LLP
366 Madison Avenue, Sixth Floor
New York, NY 10017

<u>s/ Maria Kostytska</u>
Maria Kostytska (New York Bar # 4380101)
Winston & Strawn, LLP
68 rue du Faubourg Saint Honoré
Paris 75008, France
(331) 53648282
(331) 53648220 (fax)

*Counsel for Ukraine*