UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

IN RE SUBPOENAS SERVED ON LLOYDS
BANKING GROUP PLC; LLOYDS AMERICA
SECURITIES CORPORATION; LLOYDS BANK
CORPORATE MARKETS PLC; THE
CANADIAN IMPERIAL BANK OF COMMERCE;
CIBC BANK U.S.A.; BANK OF AMERICA
CORPORATION; BANK OF AMERICA, N.A.;
WELLS FARGO & COMPANY; WELLS FARGO
BANK, N.A.; THE GOLDMAN SACHS GROUP,
INC.; GOLDMAN SACHS & CO. LLC; GOLDMAN
SACHS INTERNATIONAL; MORGAN STANLEY;
MORGAN STANLEY & CO. LLC; MORGAN
STANLEY & CO. INTERNATIONAL PLC;
MIZUHO BANK, LTD.; MIZUHO AMERICAS
LLC; MIZUHO SECURITIES USA LLC; CRÉDIT
AGRICOLE CIB; CREDIT AGRICOLE SECURITIES
(USA) INC.; CREDIT AGRICOLE AMERICA
SERVICES, INC.; SOCIÉTÉ GÉNÉRALE S.A.;
SG AMERICAS SECURITIES, LLC; BANCO
SANTANDER, S.A.; AND SANTANDER
HOLDINGS USA, INC.:,

21-MC-00376 (JGK)(SN)

**ORDER**

UKRAINE

                              Petitioner,

              -against-

PAO TATNEFT,

                              Respondent.
-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

      The sovereign state of Ukraine moves this Court to quash 25 non-party subpoenas issued by respondent PAO Tatneft. It also requests attorney's fees associated with this motion. Ukraine has not demonstrated that its privacy interest in protecting the information sought outweighs the probative value of discovery. The motion is therefore denied.

## BACKGROUND

The history of this matter is detailed in the district court opinions for PAO Tatneft v. Ukraine, No. 17-cv-0582 (D.C.C. Mar. 30, 2017) ("PAO Tatneft I"), ECF No. 34, 48, 50, and 75. Accordingly, the Court recounts only those elements necessary to understand and resolve this dispute.

Tatneft is a publicly traded company organized under the laws of the Russian Federation. In 1995, Tatneft, the constituent Russian republic of Tatarstan, and Ukraine agreed to create an oil refining company, Ukrtatnafta, with each as the three major shareholders. PAO Tatneft I, ECF No. 50 at 2. Subsequently, two more investors, Seagroup International, Inc., and AmRuz Trading Co., obtained interests in the company. Together, Tatneft, Tatarstan, Seagroup, and AmRuz owned 56 percent of Ukrtatnafta. Id. at 3. Then, in 2007, the Ukrainian Privat Group acquired a one percent stake. The Privat Group next obtained Ukrainian judgments that barred Tatneft, Tatarstan, Seagroup, and AmRuz from management or ownership of Ukrtatnafta. Id.

In response, Tatneft requested negotiations to resolve this issue under Article 9(1) of the Russia-Ukraine Bilateral Investment Treaty ("BIT"). After five months of apparently fruitless negotiation, Tatneft turned to arbitration in 2008, claiming that Ukraine had failed to protect Russian investors under the BIT. Id. In 2014, the arbitration tribunal found in Tatneft's favor and ordered Ukraine to pay $112 million plus interest. Id. at 4–5.

Ukraine made several attempts to overturn this arbitration award. In 2014, it brought an challenge in the Paris Court of Appeal to annul the award. This action was denied in 2016, but Ukraine appealed that ruling to the French Court of Cassation. Id. at 5–6. Ukraine also brought two challenges in the United Kingdom, one of which was denied, and one of which was pending as of August 24, 2020. Id. at 7.

Tatneft, meanwhile, moved to enforce its award. In March 2017, it filed a Petition to Confirm Arbitral Award in the District Court for the District of Columbia. Id at 6. That petition was granted on August 24, 2020. Id. at 23. Ukraine appealed, and the parties concurrently calculated the proposed judgment. PAO Tatneft I, ECF No. 75 at 2.

Based on those calculations, the court entered a $172.9 million judgment in favor of Tatneft. Id. Ukraine neither paid this judgment nor posted an appeal bond so Tatneft began post-judgment discovery, serving Ukraine and several financial institutions with discovery requests. Id. Ukraine moved to stay the execution of judgment, but that motion was denied on June 1, 2021. Id. at 13. In this denial, the district court found that "Ukraine has been actively avoiding satisfaction of the Judgment for a number of years, albeit through legal means." Id. at 9. It also noted that "Ukraine has not proffered anything to demonstrate its willingness to pay the Judgment . . . ."

Post-judgment discovery proceeded in the meanwhile. On March 22, 2021, Tatneft informed Ukraine that it would serve subpoenas on five non-party financial entities. Ukraine v. Pao Taftnet ("PAO Tatneft II"), No. 21-mc-0376 (JGK)(SN) (S.D.N.Y. Mar. 26, 2021), ECF No. 3 at 1. The next day, Tatneft informed Ukraine that it would serve 20 more banks. Id. On March 26, Ukraine filed this motion to quash these subpoenas. PAO Tatneft II, ECF No. 1. Several of these banks have objected to the subpoenas and, as of May 10, 2021, these discussions are ongoing. PAO Tatneft II, ECF No. 11 at 4–5. None of the subpoenaed entities joins this motion. Id.

## ANALYSIS

Ukraine has not made the showing required to quash the subpoena. This issue turns on Federal Rule of Civil Procedure 69(a)(2), which provides that "[i]n aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor . . . ." Motions to quash subpoenas issued as part of this post-judgment discovery process are governed by Rule 45. See, e.g., Universitas Educ., LLC v. Nova Grp., Inc., No. 11-cv-1590 (LTS)(HBP), 2013 WL 57892, at *2 (S.D.N.Y. Jan. 4, 2013). This permits a court to quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(b)(ii). These "motions to quash are entrusted to the sound discretion of the district court." United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000).

With this background, the Court turns to the parties' arguments. First, it addresses Tatneft's argument that Ukraine lacks standing to quash non-party subpoenas. Then, it determines whether the subpoenas should be quashed on confidentiality grounds. Finally, it assesses if international comity provides a basis to quash the subpoenas.

### I. Ukraine Has Standing to Challenge the Subpoenas on Confidentiality Grounds, but Not Based on Irrelevance or Undue Burden.

Ukraine has standing to challenge Tatneft's subpoenas on the grounds of confidentiality and the threat they pose to international comity. But it lacks standing to challenge the burden these subpoenas may place on non-parties or the general relevance of the information sought.

"In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness." Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975). Thus, "[a] party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden." Universitas Educ., 2013 WL 57892, at *5. This

4

means that "a non-subpoenaed party has standing only if it has a privilege, privacy or proprietary interest in the documents sought." Id.

One such proprietary interest "applies when the subpoena seeks bank records in which a party has a confidentiality interest." Soley v. Wasserman, No. 08-cv-9262 (KMW)(FM), 2012 WL 10973451, at *1 (S.D.N.Y. Feb. 10, 2012) (collecting cases). In those cases, a party with that confidentiality interest has standing to challenge whether the information sought by the subpoena is tailored to the dispute's needs. See, e.g., Aurelius Cap. Partners v. Republic of Argentina, No. 07-cv-11327, 2013 WL 857730, at *2 (S.D.N.Y. Mar. 7, 2013) ("Because the subpoenas served on the non-party banks seek information about the Republic's financial affairs, the Republic has standing . . . on the grounds that the document requests are excessively broad and seek irrelevant private information.")

Ukraine opposes Tatneft's subpoenas on numerous grounds. It argues that the information sought is irrelevant, PAO Tatneft II, ECF No. 3 at 6–8, overbroad, id. at 9–10, confidential, id. at 10–11, would violate various foreign laws if disclosed, id. at 11–12, and would offend principals of international comity. PAO Tatneft II, ECF No. 12 at 3–8. Ukraine's confidentiality arguments implicate its privacy interest in the financial information Tatneft seeks from these 25 subpoenas. Accordingly, Ukraine can challenge the subpoenas on these grounds. Those challenges are addressed in Section II.

Ukraine, however, lacks standing to challenge these subpoenas on grounds of undue burden or relevance. First, Ukraine argues that, given the "breadth and generality of the third-party subpoenas," PAO Tatneft II, ECF No. 3 at 10, they create an undue burden. Ukraine cannot make this argument. See, e.g., Malibu Media, LLC v. Doe No. 4, No. 12-cv-2950 (JPO), 2012 WL 5987854, at *2 (S.D.N.Y. Nov. 30, 2012) ("Even where a party has standing to quash a

subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden.") (quoting Malibu Media, LLC v. John Does 1-21, No. 12-CV-00835 (REB) (MEH), 2012 WL 3590902, at *2 (D. Colo. Aug. 21, 2012).

Second, Ukraine argues that the subpoenas seek irrelevant information because the subpoenas' requests are overbroad. PAO Tatneft II, ECF No. 3 at 6–9, PAO Tatneft II, ECF No. 12 at 8–10. As an example, Ukraine suggests that the subpoenas could reach even bank information for a courier used to deliver legal documents for this matter. PAO Tatneft II, ECF No. 3 at 8 (arguing that "any Federal Express courier delivering this motion to quash would satisfy the definition of Ukraine.") Without opining whether this interpretation is accurate, the information Ukraine describes in that scenario would be irrelevant because it not about Ukraine, meaning that Ukraine has no privacy interest. Without a privacy interest, Ukraine has no standing to make this argument.

Similarly, Ukraine lacks standing to challenge these subpoenas on the grounds that they seek information about irrelevant entities. See, e.g., PAO Tatneft II, ECF No. 12 at 13 (suggesting that entities like "PJSC Centrenergo" or a private company held by a "Pavlo Kudiukin" are irrelevant). If these entities are truly independent from Ukraine, then they will have no proprietary Ukrainian information. Without this proprietary interest, Ukraine cannot challenge the subpoenas on relevance grounds. See, e.g., N'Diaye v. Metro. Life Ins. Co., No. 17-cv-4260 (GBD)(BCM), 2018 WL 2316335, at *4 (S.D.N.Y. May 8, 2018) ("Ordinarily, a party lacks standing to challenge a non-party subpoena on the basis of relevance or burden.")[1]

---

[1] Aurelius Cap. Partners suggests that a party could "quash the [nonparty] subpoenas on the grounds that the document requests are excessively broad and seek irrelevant private information." 2013 WL 857730, at *2. In that case, however, the party had a privacy interest in the information sought and therefore a proprietary interest that conferred standing. The relevance of the information sought could thus be a factor in the court's analysis of that subpoena. Here, the Court considers the relevance of the information that Ukraine has a confidentiality interest in as part of its analysis in Section II. To the

Thus, Ukraine lacks the standing to challenge these non-party subpoenas on the grounds that they are unduly burdensome or that they seek irrelevant information in which Ukraine has no confidentiality interest.

**II.   Ukraine's Privacy Concerns are Insufficient to Warrant Quashing Tatneft's Subpoenas.**

Now, the Court turns to whether Ukraine's confidentiality concerns warrant quashing the subpoena. It finds that they do not. When a party moves to quash a subpoena on privacy grounds a court must weigh the probative value of the documents sought against the privacy interests asserted. Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P., No. 13-cv-1654 (RA)(HBP), 2014 WL 5420225, at *6 (S.D.N.Y. Oct. 24, 2014) (citing Solow v. Conseco, Inc., No. 06-cv-5988 (BSJ)(THK), 2008 WL 190340, at *4 (S.D.N.Y. Jan. 18, 2008)). "The burden to demonstrate the relevance of the requested material lies with the party issuing the subpoena; the burden to show that the request is impermissible lies with the non-party opposing the subpoena." Phoenix Bulk Carriers (BVI), Ltd. v. Triorient, LLC, No. 20-cv-0936 (JGK)(RWL), 2021 WL 621226, at *3 (S.D.N.Y. Feb. 17, 2021).

Beginning with probative value, "information regarding a party's assets for purposes of enforcing a judgment is crucial and the importance weighs in favor of compelling disclosure." NML Cap., Ltd. v. Republic of Argentina, No. 03-cv-8845 (TPG), 2013 WL 491522, at *10 (S.D.N.Y. Feb. 8, 2013). Moreover, "broad post-judgment discovery in aid of execution is the norm in federal and New York state courts." EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012). "This means . . . that the judgment creditor has 'the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor . . . .'" Amtrust N. Am.,

---

degree that Ukraine challenges the subpoenas as seeking irrelevant information for which it does *not* have a confidentiality interest, like the accounts of that unfortunate Federal Express courier, it lacks the standing to raise these challenges.

Inc. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC, No. 15-cv-7505 (CM), 2016 WL 6208288, at *3 (S.D.N.Y. Oct. 18, 2016) (quoting GMA Accessories, Inc. v. Elec. Wonderland, Inc., No. 07-cv-3219 (PKC)(DF), 2012 WL 1933558 at *4 (S.D.N.Y. May 22, 2012)). This includes "asset discovery from third parties, including banks . . . ." Republic of Argentina, 695 F.3d at 207. Thus, even "sweeping" discovery orders against sovereigns may be permissible to locate assets. Republic of Argentina v. NML Cap., Ltd., 573 U.S. 134, 146 (2014)

Turning to the privacy interest, the key question is if "a party [can] show[] that disclosure will result in a clearly defined, specific and serious injury." U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc., No. 11-cv-3543 (WHP), 2013 WL 5882921, at *2 (S.D.N.Y. Oct. 25, 2013), aff'd, 593 F. App'x 32 (2d Cir. 2014) (quoting In re Terrorist Attacks on Sept. 11, 2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006)) (internal quotations omitted). Additionally, in assessing the privacy interest asserted, the Court recognizes that "foreign sovereigns . . . [are] entitled to a degree of grace and comity." Aurelius Cap. Master, Ltd. v. Republic of Argentina, 589 F. App'x 16, 18 (2d Cir. 2014). This comity urges a district court to "closely consider . . . sovereign interests in managing discovery, and . . . prioritize discovery of those documents that are unlikely to prove invasive of sovereign dignity." Id.

Applying this framework, the probative value of these documents outweighs Ukraine's privacy interest. Starting with the probative value, another district court has already found that Ukraine has "been actively avoiding satisfaction of the Judgment," PAO Tatneft I, ECF No. 75 at 9, and has not evinced any willingness to pay. None of Ukraine's papers before this Court suggests this posture has changed. See generally, PAO Tatneft II, ECF No. 3, 12, 14. Rather, Ukraine continues to insist that the only proper way for Tatneft to enforce its claim is through Ukrainian legal procedures. See, e.g., PAO Tatneft II, ECF No. 3 at 14 ("The proper method of

8

enforcing the award—which Tatneft has failed to pursue—would be to obtain a writ of execution from a Ukrainian court.") Thus, this discovery has crucial probative value: in the absence of any willingness to pay, Tatneft needs information on Ukraine's assets to satisfy the judgment.

The scope of the information sought, moreover, is proportional to the need to satisfy a $172.9 million judgment. Broad post-judgment discovery from non-party banks is normal in this Circuit. Republic of Argentina, 695 F.3d at 207. This broad discovery does have limits: in Aurelius Cap. Partners, for example, a district court determined that discovery requests defining "Argentina" as 461 entities and requesting 30 categories of documents with subparts was excessive. 2013 WL 857730, at *3. Here, though, Tatneft has identified only 19 "Identified State Controlled Entities" that count as "Ukraine." PAO Tatneft II, ECF No. 2–1 at 9–10. Its definition of "Ukraine" is otherwise reasonable.[2] Additionally, it seeks only seven categories of documents with no subparts. All of these relate to accounts, wire transfers, and securities and bond offerings that may be connected to Ukraine. Id. at 14–15. This information has the potential to reveal assets that might be available to satisfy the substantial judgment against Ukraine.

Conversely, Ukraine has not identified a privacy interest that will be harmed by this disclosure. Even though sovereigns are entitled to particular consideration in discovery proceedings, Ukraine has not shown any particularized reason to quash these subpoenas much less the "clear and defined" injury necessary.

Ukraine argues that it has an interest in preventing the disclosure of non-public financial information, PAO Tatneft II, ECF No. 3 at 11–12, particularly where that information is protected by foreign bank secrecy laws. Id. at 12. For example, it argues that disclosure would

---

[2] See, e.g., PAO Tatneft II, ECF No. 2-1 at 10. ("'UKRAINE' refers to the Respondent Ukraine, as well as its agencies, instrumentalities, ministries, political subdivisions, representatives, assigns, and the Identified State Controlled Entities, and all other Persons acting or purporting to act for or on Ukraine's behalf, whether or not authorized to do so.")

"harm Ukraine by jeopardizing sensitive information about Ukraine's sovereign activities and activities of third parties with pivotal roles in the nation's economy, including energy, infrastructure, banking, transportation, and defense." PAO Tatneft II, ECF No. 12 at 9. It also argues that it has an interest in compliance with its own laws in processing arbitral awards like this one. Id. at 14.

These arguments are too generic to support quashing the subpoena. Ukraine does not say what sensitive information might be revealed except at the broadest level of generality. Nor does it identify specific harms that will arise from disclosure. Quite the opposite: because "sensitive information" could pertain to anything from transportation to defense, and could come from either Ukraine or non-parties, it is impossible to say what information would lead to what harms.

Moreover, Ukraine has offered no evidence to support these claims. Its papers contain no affidavits or declarations from government figures or other affected entities saying why disclosure would harm Ukrainian interests. It simply asserts, for example, that "Ukraine has a real and defined interest in the confidentiality of non-public information about its own finances and the finances of related but legally distinct entities such as its agencies, instrumentalities, and organs." PAO Tatneft II, ECF No. 3 at 11–12. In support of assertions like these, it sometimes cites U.S. or Ukrainian privacy statutes. See, e.g., id. at 13 ("The general sensitivity and confidentiality of records maintained by financial institutions finds recognition in a variety of U.S. and Ukrainian laws protecting the privacy interests of even ordinary consumers. *See, e.g.*, 12 U.S.C. § 3403(a).") But a generalized privacy interest, supported only by a legal citation, is not evidence of a clear and defined injury. Even providing for the comity due foreign sovereigns, more is needed to show the kind of "clearly defined, specific and serious injury" that would merit quashing a subpoena entirely. Parnon Energy Inc., 2013 WL 5882921, at *2.

In its reply, Ukraine adds a new argument: harm might result from the disclosure of discovery information to a hostile state. Ukraine argues that Tatneft has close ties to Russia, which creates a risk of "Russia obtaining sensitive information from Tatneft, which could realistically happen with or without the consent of management and could easily take place with even one individual's cooperation." PAO Tatneft II, ECF No. 12 at 11–12.

The problem, again, is that this argument is too non-specific and unsupported. Ukraine does not say that Tatneft *has* a history of disclosing sensitive information to Russia, only that it would be possible. But, it is always *possible* that a party could disclose sensitive information. Indeed, Ukraine does not even suggest the risk would have to result from Tatneft's active collusion with Russia or with the consent of Tatneft's management. Rather, it allows that this could occur because of a single rogue individual acting without management authority. The unsubstantiated possibility of disclosure is not enough to merit quashing a subpoena. This is particularly true when that threat is raised in a reply motion, depriving Tatneft of the chance to rebut the charges.

Finally, comity cannot be invoked to quash these subpoenas. As a foreign sovereign, Ukraine is entitled to a certain degree of deference with discovery into sensitive matters. But Ukraine has not offered any evidence that the discovery Tatneft seeks concerns materials likely to "prove invasive of sovereign dignity." Aurelius Cap. Master, Ltd., 589 F. App'x at 18. The materials sought are all held by third parties and relate exclusively to accounts, bond offerings, and securities information. See, e.g., PAO Tatneft II, ECF No. 2-1 at 14–15. Ukraine does not show that this intrudes on sensitive matters. Indeed, the information sought has already been disclosed to third parties. As well, Ukraine does not suggest that it will be burdened by

processing these discovery requests, nor could it, as any processing burdens will be borne by non-parties.

Similarly, Ukraine's interest in having this judgment enforced according to its own laws and privacy rules, see, e.g., PAO Tatneft II, ECF No. 3 at 14, even if proffered as a matter of comity, is not grounds to quash these subpoenas. A general interest in adherence to privacy laws cannot overcome the importance of permitting the full and fair adjudication of judgments. See, e.g., Republic of Argentina, 2013 WL 491522, at *11 ("[T]he United States' interest in fully and fairly adjudicating the matters before its courts, including enforcing its judgments, outweighs the foreign countries' interest in protecting its banking customers' records.") Thus, in the absence of more particularized and better supported harms, comity alone cannot overcome a legitimate discovery request. See, e.g., Republic of Argentina, 573 U.S. at 146 (even "sweeping" discovery orders may be permissible against a foreign sovereign).

In sum, Ukraine has not made the showing necessary to quash the subpoena. The information sought by Tatneft is the kind traditionally gathered in post-judgment discovery and has probative value for locating assets that might be used to satisfy the judgment against Ukraine. Conversely, Ukraine has not identified a non-generalized privacy interest that will result in clear harms if violated. This is not to say that Ukraine may not have legitimate concerns with the information sought in this discovery. Those concerns, however, are better addressed by moving for an appropriate protective order rather than an attempt to quash the subpoenas entirely.

**III.   International Comity Permits Tatneft's Subpoenas**.

Finally, the doctrine of international comity does not bar these subpoenas. In addition to sometimes being invoked as a shorthand to remind courts that foreign sovereigns are entitled to a

degree of sensitivity in discovery proceedings, comity also operates as a particular doctrine of law. Ukraine's papers suggest that this doctrine is implicated by this discovery dispute. See, e.g., PAO Tatneft II, ECF No. 3 at 12, PAO Tatneft II, ECF No. 12 at 8. The doctrine of comity, however, is not a basis for quashing this subpoena.

"Comity is not just a vague political concern favoring international cooperation . . . ." Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa, 482 U.S. 522, 555 (1987) (Blackmun, J., concurring). Rather, it is a permutation of "the choice-of-law analysis, which from the very beginning has been linked to international comity . . . ." Id. Thus, when comity is invoked, the court first determines "whether there is in fact a true conflict between domestic and foreign law." Id. If so, the court then balances the interests of the two nations in the dispute using the five-factor test from the Restatement (Third) of the Foreign Relations Law of the United States § 442(1)(c). See, e.g., CE Int'l Res. Holdings, LLC v. S.A. Mins. Ltd. P'ship, No. 12-cv-08087 (CM)(SN), 2013 WL 2661037, at *8 (S.D.N.Y. June 12, 2013).

Here, Ukraine has not shown a conflict requiring a comity analysis. It suggests that the subpoenas have the potential to conflict with foreign banking laws. See, e.g., PAO Tatneft II, ECF No. 3 at 11–12. But something more than potential conflict is needed since "the Second Circuit has clearly said that bank secrecy laws are not a bar to discovery orders." Nike, Inc. v. Wu, 349 F. Supp. 3d 346, 368 (S.D.N.Y. 2018) (citing Linde v. Arab Bank, PLC, 706 F.3d 92, 114 (2d Cir. 2013)). For example, when foreign law is invoked as a barrier to discovery compliance, the preferable method for raising the defense is to support that position with affidavits of foreign law experts. See, e.g., Republic of Argentina, 2013 WL 491522, at *3 (S.D.N.Y. Feb. 8, 2013) ("[S]worn testimony or affidavits are preferable to support an argument that ordering discovery would violate foreign law."), Brentlor, Ltd. v. Schoenbach, No. 13-cv-

6697 (JGK), 2017 WL 1155906, at *1 n.1 (S.D.N.Y. Mar. 27, 2017) ("[O]pinions regarding the interpretation of foreign law are generally offered in affidavit form.") Such affidavits, laying out the specific law at issue, applying the law to the present facts, and explaining the likely penalty, might show the conflict needed to trigger a comity analysis.

Ukraine has not done this. It offers no affidavits and does not state with particularity what bank secrecy and privacy laws will be violated by disclosure. See, e.g., id. at 11–12 (noting that "many jurisdictions have blocking statutes to block subpoenas emanating from permissive common law jurisdictions" without indicating how these laws would operate to block these requests). Similarly, in footnote 3, Ukraine lists a number of countries that have banking secrecy laws but does not state which of the 25 subpoenas would violate those laws or why the information sought would violate them. Simply listing existing bank secrecy and privacy laws and stating that they could create a conflict is not enough to trigger a comity conflict analysis – there must be a showing of actual, rather than speculative, conflict between U.S. and foreign law.

Alternatively, Ukraine states that the Ukraine-Russian Federation Bilateral Investment Treaty ("BIT") underlying this dispute required the arbitration award to be enforced under Ukrainian law. Id. at 13. This issue has been mooted by other proceedings. The District Court for the District of Columbia confirmed the arbitration award against Ukraine in PAO Tatneft I, ECF No. 50. That opinion confirmed that "Tatneft is entitled to enforce that judgment through any legal means, and Ukraine has not challenged the legality of Tatneft's enforcement efforts." PAO Tatneft I, ECF No. 75 at 12. Thus, the permissibility of enforcing this arbitral award through American legal processes has already been determined by another court. This Court will not relitigate those proceedings as part of a non-party discovery motion.[3]

---

[3] Even if the Court were inclined to review the BIT's implications for this proceeding, that review would not appear to favor Ukraine. Ukraine cites Article IX of the BIT, which deals with the execution of

14

Accordingly, the Court finds that Ukraine has not made the threshold showing of conflict necessary to invoke comity to quash these subpoenas. Since these subpoenas have not been found to be an "undue burden or expense," Ukraine's motion for attorney's fees under Federal Rule of Civil Procedure 45(d)(1) is also denied.

## CONCLUSION

Ukraine's motion to quash the subpoenas is denied because its interest in preventing the disclosure of certain discovery materials is outweighed by those records' probative value. The Court respectfully directs the Clerk of Court to deny the motion at PAO Tatneft II, ECF No. 1. The Clerk of Court is further respectfully directed to correct the caption entry in this matter for party "Pao Taftnet" to "PAO Tatneft."

Absent a timely filed objection under Federal Rule of Civil Procedure 72 or further application to the Court within 14 days, the Court will close this matter.

**SO ORDERED.**

DATED:   New York, New York
         July 19, 2021

_____
SARAH NETBURN
United States Magistrate Judge

---

arbitration awards. That article, in Ukraine's translation, states that "Each Contracting Party shall undertake to execute such an award in conformity with its respective legislation." PAO Tatneft II, ECF No. 2–3 at 12. The translated preamble to the BIT states that "Contracting Parties" refers to the "Government of the Russian Federation" and the "Cabinet of Ministers of the Ukraine." Id. at 9. The natural reading is that Article IX requires the Ukraine and Russia to carry out awards according to their law, not that Tatneft has to go through Ukraine's award proceeding. Ukraine does not identify, and the Court has not located, a section of the BIT imposing a duty on Tatneft to proceed under Ukrainian law.