UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————

IN RE SUBPOENAS SERVED ON LLOYDS
BANKING GROUP PLC; LLOYDS AMERICA
SECURITIES CORPORATION; LLOYDS BANK
CORPORATE MARKETS PLC; THE CANADIAN       21-mc-376 (JGK)
IMPERIAL BANK OF COMMERCE; CIBC BANK
U.S.A.; BANK OF AMERICA CORPORATION;
BANK OF AMERICA, N.A.; WELLS FARGO &
COMPANY; WELLS FARGO BANK, N.A.; THE      MEMORANDUM OPINION AND
GOLDMAN SACHS GROUP, INC.; GOLDMAN        ORDER
SACHS & CO. LLC; GOLDMAN SACHS
INTERNATIONAL; MORGAN STANLEY;
MORGAN STANLEY & CO. LLC; MORGAN
STANLEY & CO. INTERNATIONAL PLC;
MIZUHO BANK, LTD.; MIZUHO AMERICAS
LLC; MIZUHO SECURITIES USA LLC;
CRÉDIT AGRICOLE CIB; CREDIT AGRICOLE
SECURITIES (USA) INC.; CREDIT
AGRICOLE AMERICA SERVICES, INC.;
SOCIÉTÉ GÉNÉRALE S.A.; SG AMERICAS
SECURITIES, LLC; BANCO SANTANDER,
S.A.; AND SANTANDER HOLDINGS USA,
INC.

UKRAINE,

                    Petitioner,

        - against -

PAO TATNEFT,

                    Respondent.

———————————————————

JOHN G. KOELTL, District Judge:

        On March 26, 2021, the sovereign state of Ukraine brought

this action to quash 25 non-party subpoenas issued by the

respondent, PAO Tatneft ("Tatneft"). On July 19, 2021,

Magistrate Judge Sarah Netburn denied Ukraine's motion to quash,

finding that Ukraine had not sufficiently demonstrated that its

interests in protecting the information sought outweighed the probative value of discovery. See ECF No. 16 ("Order").

On August 23, 2021, Ukraine filed objections to the Magistrate Judge's Order (the "Order"). ECF No. 19. For the following reasons, Ukraine's objections are **overruled**, and the Order is **affirmed**.

I.

The Court presumes general familiarity with the facts of this case, which are set forth in the Order and in the district court's opinions in PAO Tatneft v. Ukraine, No. 17-cv-582 (D.C.C. filed Mar. 30, 2017).

In brief, in 2014, an international arbitral tribunal awarded Tatneft, a publicly traded company organized under the laws of the Russian Federation, a final merits award of $112 million plus interest against Ukraine. Order at 2. Since 2014, Ukraine has made several attempts to overturn this award. Id. Meanwhile, Tatneft has moved to enforce it. Id. at 3. In March 2017, Tatneft filed a petition to confirm the award in the United States District Court for the District of Columbia. Id. That petition was granted on August 24, 2020, and the district court entered a $172.9 million judgment in favor of Tatneft. Id.

Because Ukraine had avoided payment of the district court's judgment and had failed to post an appeal bond, Tatneft began post-judgment discovery, serving Ukraine and several financial

2

institutions with discovery requests. Id. On March 22, 2021,
Tatneft informed Ukraine that it would serve subpoenas on five
non-party financial entities. Id. The next day, Tatneft informed
Ukraine that it would serve 20 additional subpoenas on non-
parties. Id.

On March 26, 2021, Ukraine moved in this Court to quash the
25 non-party subpoenas. ECF No. 1. On July 19, 2021, Magistrate
Judge Netburn denied Ukraine's motion, finding that Ukraine's
confidentiality interests were insufficient to warrant quashing
the subpoenas, and that international comity concerns did not
otherwise require that the subpoenas be quashed. See Order.

## II.

When considering objections to an order issued by a
magistrate judge concerning discovery-related matters, the court
must "modify or set aside any portion of the magistrate judge's
order found to be clearly erroneous or contrary to law." Fed. R.
Civ. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A).[1] An order is
"clearly erroneous" only when "the reviewing court on the entire
evidence is left with the definite and firm conviction that a
mistake has been committed." Surles v. Air France, 210 F. Supp.
2d 501, 502 (S.D.N.Y. 2002). An order is "contrary to law" when

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all
alterations, citations, footnotes, and internal quotation marks in
quoted text.

it "fails to apply or misapplies relevant statutes, case law or
rules of procedure." Id. A magistrate judge's resolution of a
discovery dispute deserves substantial deference. Lastra v. City
of New York, No. 16-cv-3088, 2020 WL 5596100, at *1 (S.D.N.Y.
Sept. 18, 2020). Accordingly, a party seeking to overturn a
magistrate judge's discovery-related decision carries a "heavy
burden," and reversal is appropriate only if the magistrate
judge's discretion is abused. Thai Lao Lignite (Thailand) Co. v.
Gov't of Lao People's Democratic Republic, 924 F. Supp. 2d 508,
511-12 (S.D.N.Y. 2013).

### III.

Ukraine makes five objections to the Order denying its
motion to quash the non-party subpoenas: the Order was (1)
contrary to law because it improperly applied precedent on the
standing of foreign sovereign states to dispute the relevance of
non-party subpoenas; (2) contrary to law because it failed to
apply, or improperly applied, Federal Rule of Civil Procedure 69
("Rule 69"); (3) clearly erroneous and contrary to law because
it ignored or discounted Ukraine's asserted interests; (4)
contrary to law because it treated Ukraine's national interests
and comity as equivalent to individual or corporate privacy
interests; and (5) contrary to law because it failed to consider
Ukraine's alternative request to modify the subpoenas. The Court
considers each of these arguments in turn.

4

**A.**

Ukraine first objects that the Order was contrary to law because it misapplied precedent governing the standing of foreign sovereign states to dispute the relevance of non-party subpoenas.

Magistrate Judge Netburn correctly recognized that in order to have standing to challenge a subpoena request, the objecting party must generally have a personal right or privilege in the information sought. Order at 4; see also Nova Prod., Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241 (S.D.N.Y. 2004). Accordingly, the Magistrate Judge found that Ukraine had standing to challenge the subpoenas on the grounds that they sought Ukraine's confidential information and on the grounds that they implicated international comity concerns. However, the Magistrate Judge found that Ukraine lacked standing to object to the subpoenas on the grounds that they sought information from entities that had no relevant relationship to Ukraine. Ukraine could not claim a personal or proprietary interest in the information sought by the subpoenas if those entities were truly independent from Ukraine. See Order at 6.[2]

---

[2] The Magistrate Judge also found that Ukraine had no standing to object to the subpoenas on the grounds that they posed an undue burden to the subpoena recipients, because Ukraine itself was not being compelled to produce any discovery. See Order at 5–6 (citing Malibu Media, LLC v. Doe No. 4, No. 12-cv-2950, 2012 WL 5987854, at *2 (S.D.N.Y. Nov. 30, 2012)). However, because Ukraine does not appear to

Contrary to Ukraine's objection, the Magistrate Judge's holding was therefore in accord with Aurelius Capital Partners v. Republic of Argentina, No. 07-cv-11327, 2013 WL 857730 (S.D.N.Y. Mar. 7, 2013), which held that the Republic of Argentina had standing to object to non-party subpoenas specifically because its confidential financial interests were implicated. Id. at *2 ("Because the subpoenas served on the non-party banks seek information about the Republic's financial affairs, the Republic has standing to seek to quash the subpoenas on the grounds that the document requests are excessively broad and seek irrelevant private information."). Part II of the Magistrate Judge's Order considered a similar relevance argument — namely, whether Ukraine's privacy concerns warranted quashing the subpoenas. Ukraine's claim that the Magistrate Judge misapplied Aurelius Capital Partners in failing to recognize its standing to object to the relevance of the subpoenas because its confidential financial interests were concerned is therefore belied by the Order, which performed that analysis.[3] Additionally, Aurelius Capital Partners is consistent

---

object to that holding, the Court does not consider whether it was contrary to law.

[3] Ukraine's attempt to distinguish the Magistrate Judge's analysis in Part II of the Order from a "pure relevance argument," ECF No. 22, at 3, is without merit. Specifically, Ukraine argues that the Magistrate Judge's relevance analysis improperly required Ukraine to "prove its privacy interests before Tatneft met its initial burden of proving that the information and documents sought are relevant and

with the Magistrate Judge's holding that Ukraine had no standing
to object to the requests concerning irrelevant entities,
because Ukraine's relevance arguments effectively conceded that
those requests did not involve Ukraine's interests or
confidential information.

Citing to no relevant statute, case, or rule of procedure
that the Magistrate Judge misapplied, Ukraine has failed to meet
its heavy burden of establishing that the Magistrate Judge's
ruling was contrary to law. Ukraine's objection that the Order
failed to apply precedent governing a foreign sovereign state's
standing to dispute non-party subpoenas is therefore overruled.

**B.**

Second, Ukraine objects that the Order was contrary to law
because it allegedly failed to recognize or apply Rule 69. Rule
69 provides that "[i]n aid of the judgment or execution, the
judgment creditor . . . may obtain discovery from any person —
including the judgment debtor — as provided in these rules or by
the procedure of the state where the court is located." Fed. R.
Civ. P. 69(a)(2). Discovery under Rule 69 "is constrained
principally in that it must be calculated to assist in

---

proportional to the needs of the case." Id. But the Magistrate Judge
did no such thing. The Magistrate Judge explicitly began her analysis
by considering the probative value of the information sought, Order at
7, and recognized that the "burden to demonstrate the relevance of the
requested material lies with the party issuing the subpoena," id.
(quoting Phoenix Bulk Carriers (BVI), Ltd. v. Triorient, LLC, No. 20-
cv-936, 2021 WL 621226, at *3 (S.D.N.Y. Feb. 17, 2021)).

collecting on a judgment." EM Ltd. v. Republic of Argentina, 695
F.3d 201, 207 (2d Cir. 2012) (citing Fed. R. Civ. P. 69(a)(2)
and Fed. R. Civ. P. 26(b)(1)), aff'd sub nom. Republic of
Argentina v. NML Cap., Ltd., 573 U.S. 134 (2014). "New York
state's post-judgment discovery procedures, made applicable to
proceedings in aid of execution by Federal Rule 69(a)(1), have a
similarly broad sweep," providing that a "judgment creditor may
compel disclosure of all matter relevant to the satisfaction of
the judgment." Id. (citing N.Y. C.P.L.R. § 5223).

The Magistrate Judge rightly recognized that broad
discovery has its limits. See Fed. R. Civ. P. 26(b)(1). But she
found that the limit was not reached in this case because the
subpoena requests were limited to information that related to
the judgment debtors, their assets, or suspected transfers.
Additionally, Tatneft identified only 19 "Identified State
Controlled Entities" that counted as Ukraine; the subpoenas
sought only seven categories of documents with no subparts; and
the information at issue had the potential to satisfy the
substantial judgment against Ukraine, which it had failed to pay
over the course of nearly seven years. After carefully weighing
the relevance of this discovery against Ukraine's asserted
interests, Magistrate Judge Netburn found that the discovery
sought was proportional to the need to satisfy the judgment in
this case. This analysis comfortably satisfies Rule 69 and was

not contrary to law. That Ukraine disagrees with the Magistrate Judge's legal analysis and conclusion does not mean that she committed an abuse of discretion. See Edmonds v. Seavey, No. 08-cv-5646, 2009 WL 2150971, at *2 (S.D.N.Y. July 20, 2009) ("A showing that reasonable minds may differ on the wisdom of granting the defendant's motion is not sufficient to overturn a magistrate judge's decision.").

Nor was the Magistrate Judge's ruling on the relevance of the subpoenas contrary to law because she accepted the definition of "Ukraine" to include the 19 agencies and instrumentalities. First, the Magistrate Judge was within her discretion to accept Tatneft's definition of Ukraine. It is well settled that "broad post-judgment discovery in aid of execution is the norm in federal and New York state courts," and "[i]t is not uncommon to seek asset discovery from third parties, including banks, that possess information pertaining to the judgment debtor's assets." EM Ltd., 695 F.3d at 207. This is true even in cases involving sovereign entities. See, e.g., id.; Aurelius Cap. Master, Ltd. v. Republic of Argentina, 589 F. App'x 16, 18 (2d Cir. 2014); SerVaas, Inc. v. Republic of Iraq, No. 09-cv-1862, 2012 WL 13071814, at *3 (S.D.N.Y. Aug. 29, 2012), enforced, 2013 WL 3146787 (S.D.N.Y. June 19, 2013), aff'd in part, rev'd in part on other grounds, 2013 WL 5913363 (S.D.N.Y. Nov. 4, 2013).

not contrary to law. That Ukraine disagrees with the Magistrate
Judge's legal analysis and conclusion does not mean that she
committed an error of law. See Edmonds v. Seavey, No. 08-cv-
5646, 2009 WL 2150971, at *2 (S.D.N.Y. July 20, 2009) ("A
showing that reasonable minds may differ on the wisdom of
granting the defendant's motion is not sufficient to overturn a
magistrate judge's decision.").

Nor was the Magistrate Judge's ruling on the relevance of
the subpoenas contrary to law because she accepted the
definition of "Ukraine" to include the 19 agencies and
instrumentalities. First, the Magistrate Judge was within her
discretion to accept Tatneft's definition of Ukraine. It is well
settled that "broad post-judgment discovery in aid of execution
is the norm in federal and New York state courts," and "[i]t is
not uncommon to seek asset discovery from third parties,
including banks, that possess information pertaining to the
judgment debtor's assets." EM Ltd., 695 F.3d at 207. This is
true even in cases involving sovereign entities. See, e.g., id.;
Aurelius Cap. Master, Ltd. v. Republic of Argentina, 589 F.
App'x 16, 18 (2d Cir. 2014); SerVaas, Inc. v. Republic of Iraq,
No. 09-cv-1862, 2012 WL 13071814, at *3 (S.D.N.Y. Aug. 29,
2012), enforced, 2013 WL 3146787 (S.D.N.Y. June 19, 2013), aff'd
in part, rev'd in part on other grounds, 2013 WL 5913363
(S.D.N.Y. Nov. 4, 2013).

Furthermore, Ukraine's argument that the Magistrate Judge abused her discretion because Tatneft had not established the relevance of information about Ukrainian assets that are "presumptively immune from attachment and execution" is also rejected. See ECF No. 19, at 10. Ukraine does not cite to any authority to support its assertion of immunity. Moreover, "[w]hether a particular sovereign asset is immune from attachment . . . does not affect discovery." EM Ltd., 695 F.3d at 209. As in EM Ltd., whatever hurdles Tatneft will face before attaching Ukraine's property, "it need not satisfy the stringent requirements for attachment in order to simply receive information about [Ukraine's] assets." Id.[4] This argument is therefore unpersuasive.

Because Magistrate Judge Netburn properly applied Rule 69 and did not otherwise abuse her broad discretion in weighing the probative value of the information sought against Ukraine's asserted interests, Ukraine's second objection is overruled.

---

[4] Ukraine tries to distinguish this holding by arguing that, unlike Argentina in EM Ltd., it does not rely on the Foreign Sovereign Immunities Act ("FSIA") for sovereign immunity but instead relies on "the basic concept of relevance embedded in Rule 69." ECF No. 19, at 10. But Ukraine does not elaborate on why this reliance should change EM Ltd.'s rule. Moreover, it is unclear where Ukraine finds immunity in Rule 69. As courts in this circuit have recognized, broad discovery in federal courts is the norm, not the exception, and this is recognized in Rule 69. See EM Ltd., 695 F.3d at 207. Ukraine's attempt to assert a form of sovereign immunity against post-judgment discovery and distinguish the rule provided in EM Ltd. is rejected.

C.

Ukraine relatedly objects that the Order was clearly
erroneous and/or contrary to law because it ignored or
discounted Ukraine's asserted interests that would be harmed by
disclosure. Ukraine's argument is threefold: (1) the Order
"clearly erred by ignoring the national interest Ukraine
articulated in the confidentiality of sensitive information
related to the disposition of its military assets, its
diplomatic and consular spending, and central banking and
sovereign bond activities that implement the nation's monetary
policy"; (2) the Order "committed legal error by applying an
inapposite legal standard when it disregarded Ukraine's other
asserted interests on the ground that Ukraine was not threatened
by a 'clearly defined, specific and serious injury'"; and (3)
the Order "committed legal error by erecting an unprecedented
bar to Ukraine's argument that it is harmed by subpoenas
requiring third parties to disclose sensitive information that
could jeopardize the nation's physical and economic welfare."
ECF No. 19, at 12, 13, 16.

Each of Ukraine's arguments fail. As to the first and
second arguments, the Order did not clearly err by ignoring
Ukraine's asserted national interest in the confidentiality of
sensitive information, or commit legal error by requiring a
heightened showing of clearly defined, specific, and serious

injury. The Order specifically noted that Ukraine, as a foreign sovereign, was afforded a "degree of grace and comity," and recognized the court's duty to "closely consider" sovereign interests in managing discovery, and to "prioritize discovery of those documents that are unlikely to prove invasive of sovereign dignity." Order at 8 (quoting Aurelius Cap. Master, Ltd., 589 F. App'x at 18). The Magistrate Judge nonetheless found, "[e]ven though sovereigns are entitled to particular consideration in discovery proceedings," that Ukraine had failed to identify a sufficient privacy interest that would be harmed by disclosure, "much less the 'clear and defined' injury necessary." Id. at 9. This conclusion was not an abuse of discretion. The burden of persuasion in a motion to quash a subpoena is borne by the movant, John Wiley & Sons, Inc. v. Doe Nos. 1-30, 284 F.R.D. 185, 189 (S.D.N.Y. 2012), and courts in this circuit have consistently held that it is insufficient for movants to make only "general and conclusory objections" in the context of a motion to quash — even in complex cases, see, e.g., In re Evenstar Master Fund SPC, No. 20-mc-00418, 2021 WL 3829991, at *13 (S.D.N.Y. Aug. 27, 2021); Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P., No. 13-cv-1654, 2014 WL 5420225, at *6 (S.D.N.Y. Oct. 24, 2014); US Bank Nat'l Ass'n v. PHL Variable Ins. Co., No. 12-cv-6811, 2012 WL 5395249, at *3 (S.D.N.Y. Nov. 5, 2012). Ukraine cites to no authority that would exempt

sovereign states from this obligation. Sovereign states — just
like private parties — must put forth specific, non-conclusory
arguments to support their claims. Arguing that discovery will
generally harm the sovereign state's economy — or its energy,
infrastructure, banking, transportation, and defense systems —
in a conclusory fashion will not suffice to carry this burden on
a motion to quash. See SerVaas, 2012 WL 13071814, at *2 (noting,
in a case involving the Republic of Iraq, that "[b]road
allegations of harm, unsubstantiated by specific examples or
articulated reasoning" cannot support the issuance of a
protective order).

Nor did the Magistrate Judge commit legal error by
"erect[ing] an unprecedented bar to Ukraine's argument" and
thereby jeopardizing Ukraine's physical and economic welfare.
ECF No. 19, at 16. Ukraine's argument relies on its claim that
Tatneft is closely allied with the Russian Federation and could
disclose to it Ukraine's sensitive information. But even if
Ukraine did not forfeit this argument by raising it for the
first time in a reply brief, see, e.g., ABN Amro Verzekeringen
BV v. Geologistics Americas, Inc., 485 F.3d 85, 100 n.16 (2d
Cir. 2007), the Magistrate Judge — like the D.C. district court
and the international arbitral tribunal — found that this claim
was not factually supported and was too hypothetical to be given
credence. This finding was not an abuse of discretion. Cf.

13

Arista Recs., LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010)
(noting that a court abuses its discretion when its decision
"cannot be located within the range of permissible decisions").

Ukraine's objection that the Magistrate Judge ignored or
discounted its asserted interests is overruled.

**D.**

Additionally, Ukraine objects that the Order was contrary
to law because it treated Ukraine's national interests and
comity as equivalent to individual or corporate privacy
interests.

However, the Magistrate Judge explicitly and carefully
considered Ukraine's status as a sovereign state and afforded it
the comity and grace that it deserved. Even with this due
consideration, Magistrate Judge Netburn found Ukraine's
arguments to be unpersuasive. This conclusion was not contrary
to law. That courts must "take care to demonstrate due respect
. . . for any sovereign interest expressed by a foreign state,"
Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct.
for S. Dist. of Iowa, 482 U.S. 522, 546 (1987), does not mean
that courts must take a foreign state's claims at face value or
accept unsupported claims. The Supreme Court, and numerous
courts in this circuit, have rejected arguments put forth by
foreign states in the discovery context. See, e.g., NML Cap.,
Ltd., 573 U.S. 134; Aurelius Cap. Master, Ltd., 589 F. App'x 16.

14

The Magistrate Judge's Order was not contrary to law. Rather, the Order appropriately applied the relevant law concerning discovery to a foreign state and found a foreign state's arguments to be unpersuasive.

### E.

Ukraine finally objects that the Order failed to consider its alternative request to modify the subpoenas.

In its briefing before the Magistrate Judge, Ukraine failed to suggest the specific ways in which the subpoenas ought to have been narrowed. Because Ukraine has not established that the Magistrate Judge abused her discretion in failing to sua sponte craft the parameters for modifying the subpoenas, this objection is overruled.

### IV.

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the reasons explained above, Ukraine's objections to the Order are **overruled**, and the Order is **affirmed**.

However, the case is **remanded** to Magistrate Judge Netburn for consideration of an appropriate protective order. Magistrate Judge Netburn noted in her Order that the various interests asserted by Ukraine could be handled with an appropriate protective order, and the Court agrees.


**SO ORDERED.**

Dated:    New York, New York
          November 22, 2021

                                    John G. Koeltl
                              United States District Judge

16