IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SUBPOENAS SERVED ON LLOYDS BANKING GROUP PLC; LLOYDS AMERICA SECURITIES CORPORATION; LLOYDS BANK CORPORATE MARKETS PLC; THE CANADIAN IMPERIAL BANK OF COMMERCE; CIBC BANK U.S.A.; BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.; WELLS FARGO & COMPANY; WELLS FARGO BANK, N.A.; THE GOLDMAN SACHS GROUP, INC.; GOLDMAN SACHS & CO. LLC; GOLDMAN SACHS INTERNATIONAL; MORGAN STANELY; MORGAN STANELY & CO. LLC; MORGAN STANLEY & CO INTERNATIONAL PLC; MIZUHO BANK, LTD.; MIZUHO AMERICAS LLC; MIZUHO SECURITIES USA LLC; CRÉDIT AGRICOLE CIB; CREDIT AGRICOLE SECURITIES (USA) INC.; CREDIT AGRICOLE AMERICA SERVICES, INC.; SOCIÉTÉ GÉNÉRALE S.A.; SG AMERICAS SECURITIES, LLC; BANCO SANTANDER, S.A.; AND SANTANDER HOLDINGS USA, INC.: | Misc. Case No. 1:21-mc-00376-JGK-SN<br><br>(Arising from Case No. 1:17-cv-00582-CKK in the United States District Court for the District of Columbia, pending on appeal in Case No. 20-7091 in the United States Court of Appeals for the District of Columbia Circuit) |
| UKRAINE,<br>                    Petitioner,<br><br>      -against-<br><br>PAO TATNEFT,<br>                    Respondent. | |

**PETITIONER'S OPPOSITION TO UKRAINE'S MOTION FOR PROTECTIVE ORDER**

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT ....................................................................... 1

PROCEDURAL BACKGROUND........................................................................ 4

ARGUMENT ............................................................................................... 9

I.   TATNEFT'S PROPOSED PROTECTIVE ORDER ADEQUATELY
     ADDRESSES ALL OF UKRAINE'S LEGITIMATE
     CONFIDENTIALITY CONCERNS ............................................................ 9

II.  UKRAINE FAILS TO SHOW "GOOD CAUSE" FOR ENTRY OF
     ITS PROPOSED PROTECTIVE ORDER, WHICH SEEKS
     UNDULY RESTRICTIVE AND UNNECCESSARY PROVISIONS ...................... 12

     A.   There Is No "Good Cause" For Ukraine's Proposed
          Restrictions On So-Called "Classified" Information Or To
          Restrict "Attorneys Eyes Only" Information To Two Tatneft
          Outside Counsel .......................................................................... 13

     B.   There Is No "Good Cause" For Ukraine's Proposed
          Prohibition On Production Of Classified Defense Information ...................... 19

     C.   There Is No "Good Cause" To Restrict Use Of Discovery
          Materials To Enforcement Of The Judgment Only In The
          United States ............................................................................. 22

CONCLUSION............................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      <u>**Page(s)**</u>

*Alfadda v. Fenn*,
    149 F.R.D. 28 (S.D.N.Y. 1993) ................................................................ 13, 18-19

*Application of Akron Beacon J.*,
    No. 94 Civ. 1402 (CSH), 1995 WL 234710 (S.D.N.Y. Apr. 20, 1995) ...................................13

*Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*,
    178 F.3d 943 (7th Cir. 1999) ..................................................................15

*Cipollone v. Liggett Group, Inc.*,
    785 F.2d 1108, 1121 (3d Cir.1986)............................................................13

*EM Ltd. v. Republic of Argentina*,
    695 F.3d 201 (2d Cir. 2012)..............................................................5, 23

*Gillespie v. Charter Commc'ns*,
133 F. Supp. 3d 1195 (E.D. Mo. 2015)..........................................................18

*In re Agent Orange Prod. Liab. Litig.*,
    821 F.2d 139 (2d Cir. 1987)................................................................12

*In re Terrorist Attacks on September 11, 2001*,
    454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006).....................................................13

*In re Terrorist Bombings of U.S. Embassies in E. Afr.*,
    552 F.3d 93 (2d Cir. 2008)..................................................................16

*Pitsiladi v. Guerrero*,
    No. 07 Civ. 6605(JGK)(JCF), 2008 WL 5454234 (S.D.N.Y. Dec. 30, 2008)........................13

*Playskool, Inc. v. Famus Corp.*,
    No. 80 Civ. 6723, 1981 WL 40562 (S.D.N.Y. July 15, 1981) ................................13

*Reed v. Bennett*,
    193 F.R.D. 689 (D. Kansas 2000)............................................................15

*Republic of Argentina v. NML Cap., Ltd.*,
    573 U.S. 134 (2014).....................................................................5, 22-23

*Tatneft v. Ukraine*,
    21 F.4th 829 (D.C. Cir. 2021)..............................................................4

*U.S. v. Int'l Bus. Machs. Corp.*,
  453 F. Supp. 194 (S.D.N.Y. 1977) ........................................................21

**Statutes**

Classified Information Procedures Act, 18 U.S.C. app. 3 §§ 1-16 ................16

**Rules**

Fed. R. Civ. P. 26(c)(1) .............................................................................12

Fed. R. Civ. P. 69 ......................................................................................22

**Other Authorities**

3 Bus. & Com. Litig. Fed. Cts. § 29:11 (5th ed.) ..............................12, 18

Agreed Confidentiality Order, *Liebovitch v. Iran*, No. 08-cv-01939 (N.D. Ill. Jan. 29,
  2016), Dkt. No. 192 ................................................................................11

(Consent) Protective Order, *Flatow v. Iran*, No. 97-cv-00396 (D.D.C. Mar. 15, 2001),
  Dkt. No. 162 .....................................................................................10, 17

Protective Order, *Owens v. Sudan*, No. 01-cv-02244 (D.D.C. June 17, 2010),
  Dkt. No. 184 ..........................................................................................17

Protective Order, *Owens v. Sudan*, No. 01-cv-02244 (D.D.C. July 8, 2019),
  Dkt. No. 436 .............................................................................10, 16, 18

Renewed Unopposed Motion for Entry of Protective Order at 1-2, *Owens v. Sudan*, No.
  01-cv-02244 (D.D.C. June 8, 2010), Dkt. No. 183 ................................17

Stipulated Protective Order, *BCB Holdings Ltd. v. Gov't of Belize*, No. 14-cv-01123-
  CKK (D.D.C. Oct. 31, 2017), Dkt. No. 74 ..............................................23

Stipulated Protective Order, *NML Cap., Ltd. v. Republic of Argentina*, No. 06-cv-6466
  (S.D.N.Y. Sept. 11, 2008), Dkt. No. 46 .......................................10-11, 16, 18, 23

Wright & Miller, 8A Fed. Prac. & Proc. Civ § 2035 (3d ed. 2002) ............12

Petitioner PAO Tatneft ("Tatneft"), by and through its undersigned counsel, respectfully submits this Opposition to Respondent Ukraine's ("Ukraine") Motion for Protective Order, ECF No. 34,[1] filed January 21, 2022 (the "Motion" or "Motion for Protective Order") pursuant to the Court's briefing schedule order entered on December 10, 2021, ECF No. 32.

## PRELIMINARY STATEMENT

Ukraine's Motion is a vastly overbroad attempt to restrict Tatneft's ability to obtain, review and use documents in the hands of non-party bank and financial institutions to aid Tatneft's execution of its unsatisfied $172 million judgment against Ukraine (the "Judgment"). This Court has already denied each and every objection interposed by Ukraine to the Subpoenas,[2] a decision affirmed by Judge Koeltl, and now the only issue is the appropriate confidentiality treatment for the documents the Subpoena recipients will be producing.  This Court should enter Tatneft's proposed form of two-tier protective order, which adequately addresses all legitimate confidentiality concerns Ukraine has raised, but does not impose the unreasonable constraints Ukraine demands, which include restricting the ability of Tatneft's counsel to review documents and providing Ukraine with the unilateral ability to direct the non-parties to withhold certain documents, as well as seeking to reargue its motion to quash by limiting the geographic scope of use of documents produced in response to the Subpoenas.

Ukraine argues for a protective order that will allow it to provide heightened designations for documents that—essentially in its sole discretion—it chooses to label as "Classified

---

[1]      "ECF Nos." refer to the docket of the pending proceedings, *Ukraine v. PAO Tatneft*, No. 1:21-mc-00376-JGK-SN (S.D.N.Y.).  "Dkt. Nos." refer to docket numbers in *PAO Tatneft v. Ukraine*, Case No. 1:17-cv-00582-CKK (D.D.C.).

[2]      "Subpoenas" refers to the post-judgment discovery subpoenas served by Tatneft on various financial institutions that were the subjects of Ukraine's earlier motion to quash.  ECF No. 1.

Information" or "Classified Defense Information," which according to Ukraine implicate "state secrets" under Ukrainian law or, if disclosed, would cause damage to the national security of Ukraine. Ukraine makes no argument, nor could it, that it entrusts "state secrets," or any other information that potentially undermines Ukrainian national security, to the non-party Subpoena recipients, which are non-Ukrainian commercial institutions with offices in New York. Ukraine's designation scheme, applied to documents already held by non-Ukrainian private parties, is completely unnecessary and a palpable pretext to avoid production and further delay the discovery process.

For example, in seeking the right to unilaterally designate "Classified Information," Ukraine defines "state secrets" to extend to economic and financial matters, the very subjects that asset discovery in aid of execution must necessarily involve, and which do not warrant the protections Ukraine seeks. Moreover, Ukraine seeks to produce that information only to outside attorneys for Tatneft who voluntarily agree to submit to a background check to be conducted by Ukraine's investigators of choice, an intrusive and extraordinary procedure that clearly goes beyond addressing any legitimate confidentiality concerns regarding non-party document production. Under Ukraine's extraordinary procedure, unless and until those background checks are completed to Ukraine's satisfaction, *no one* at Tatneft's U.S. outside counsel—all of whom, of course, have successfully undergone the character and fitness examinations that being admitted as a member of the bar entails—would be entitled to see these "Classified Information" documents or read Ukraine's interrogatory responses involving such information. That Ukraine has shown no evidence of such a requirement of employees at the institutions at which it stores its financial information further highlights the absurdity of this proposal. The combination of unfettered discretion to decide what is a "state secret," coupled with the unilateral right to

"approve" Tatneft's outside counsel viewing "Classified Information," would undoubtedly result in Tatneft's counsel effectively being deprived of access to most, if not all, of Ukraine's documents and information held by the non-party financial institutions; at a minimum, the process will be further inordinately delayed, as it has for nearly a year since the Subpoenas were served.[3]

Similarly, Ukraine's Motion for Protective Order asks this Court to expressly relieve the subpoenaed institutions of their obligation to produce what Ukraine may unilaterally decide constitutes "Classified Defense Information" regarding military, defense, or intelligence that it considers as implicating "state secrets" under Ukrainian law.  Ukraine also seeks to exclude production of documents relating to State Controlled Entities that have already been upheld as discoverable by this Court and Judge Koeltl in denying Ukraine's prior motion to quash the Subpoenas in an inappropriate attempt to again assert standing to make objections for entities that Ukraine itself alleges are "legally distinct" from Ukraine.  Order, ECF No. 16 at 10.

As justification for its extraordinary designation scheme and as the rhetorical centerpiece of its Motion, Ukraine invokes the heightened tensions between it and the Russian Federation and the specter of Tatneft (and its U.S. counsel) intentionally or inadvertently passing on the fruits of discovery from Ukraine to the Russian Government.  But multiple courts have now rejected Ukraine's allegations of the risk of a "leak" of information from Tatneft, a private company in the Russian Federation, including this Court and Judge Koeltl, and, most recently, on

---

[3]       Relatedly, and as noted below, even if certain information is not designated as "Classified Information," Ukraine proposes restricting the outside counsel entitled to review the documents Ukraine designates as Attorneys Eyes Only Information to the two Binder & Schwartz attorneys who have formally appeared in this action, and only two other lawyers at other U.S. outside counsel who agree to subject themselves to and who presumably "pass" the background check to be performed by Ukraine.

February 2, 2022, the D.C. District Court in denying Ukraine's application for a stay of that Court's order to produce documents starting February 3, 2022, pending resolution of Ukraine's belated motion for a protective order in that proceeding.  Tatneft and its counsel share the hope that the disputes between the governments of the Russian Federation and Ukraine are peacefully and promptly resolved.  But that political conflict, unfortunate as it is, is not an excuse to hamstring Tatneft's receipt and use of discovery this Court has approved.

As Tatneft has made clear from the outset of its discovery efforts almost a year ago, its only goal is to seek information on the existence and location of Ukraine's assets, because it does not know what and where they are, so it can execute on the unsatisfied $172 million Judgment in its favor.  Ukraine could easily avoid the parade of horribles described in its Motion simply by bonding or paying that Judgment, which was affirmed by the D.C. Circuit Court of Appeals on December 28, 2021.[4]  If Ukraine refuses to do that, it must not be allowed to create stumbling blocks for Tatneft to receive relevant information from the non-party banks and financial firms that it is entitled to discover in order to execute that Judgment.

Accordingly, the Court should deny Ukraine's Motion for Protective Order, and instead enter Tatneft's proposed form of order submitted as "Proposed Order."

## PROCEDURAL BACKGROUND

On January 11, 2021, the D.C. District Court issued its Judgment in the amount of US $172,910,493.00, recognizing and enforcing a 2014 arbitral award in Tatneft's favor.  *See* Judgment, Dkt. No. 61.  After Ukraine did not indicate any willingness to pay the Judgment or to post a bond to stay its enforcement, in March 2021, Tatneft served discovery requests on Ukraine in the D.C. District Court, *see* ECF No. 11-2; ECF No. 11-3, and issued Subpoenas on financial

---

[4]      *Tatneft v. Ukraine*, 21 F.4th 829 (D.C. Cir. 2021).

institutions in this District, seeking information about Ukrainian assets and accounts.  *See* ECF No. 2-1 (Petitioner's Notice of Subpoenas); ECF No. 2-2 (Petitioner's Notice of Subpoenas). The pending proceeding commenced upon Ukraine's filing of a motion to quash the Subpoenas. *See* ECF No. 3.

On July 19, 2021, this Court denied Ukraine's motion to quash the Subpoenas in its entirety and without modification of any of the document requests contained in the Subpoenas. Order, ECF No. 16 at 15.  In so doing, this Court observed that Tatneft's Subpoenas sought "the kind [of information] traditionally gathered in post-judgment discovery and [which] has probative value for locating assets that might be used to satisfy the judgment against Ukraine." *See id.* at 12.  This Court noted that Tatneft's requests were "proportional" to the specific needs of enforcing Tatneft's $172.9 million Judgment against Ukraine, *see id.* at 9 (noting that Tatneft sought only documents related to accounts, wire transfers, and securities and bond offerings connected to Ukraine), and well within the scope of discovery permissible in cases seeking enforcement of significant judgments against sovereign debtors.  *See id.* at 7-8 ("[E]ven 'sweeping' discovery orders against sovereigns may be permissible to locate assets.") (quoting *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 146 (2014)); *see also EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (noting that "broad post-judgment discovery in aid of execution is the norm in federal and New York state courts," and that "[i]t is not uncommon to seek asset discovery from third parties, including banks, that possess information pertaining to the judgment debtor's assets").

Like the D.C. District Court,[5] this Court rejected Ukraine's argument that it would face irreparable harm if Tatneft's discovery requests were fulfilled, because Tatneft might turn over sensitive and confidential information to the Russian Federation:

> Ukraine does not say that Tatneft *has* a history of disclosing sensitive information to Russia, only that it would be possible.  But, it is always *possible* that a party could disclose sensitive information.  Indeed, Ukraine does not even suggest the risk would have to result from Tatneft's active collusion with Russia or with the consent of Tatneft's management.  Rather, it allows that this could occur because of a single rogue individual acting without management authority.  The unsubstantiated possibility of disclosure is not enough to merit quashing a subpoena.

Order, ECF No. 16 at 11 (emphasis in original).  Nonetheless, to the extent that Ukraine might later identify "legitimate" confidentiality concerns, this Court found that they would be "better addressed by moving for an appropriate protective order," rather than quashing Tatneft's Subpoenas.  *Id.* at 12.

On August 23, 2021, Ukraine objected to the Court's order.  *See* ECF No. 19.  In its objection, Ukraine argued that this Court had "ignored" and "discounted" its concerns about confidentiality and that Ukraine had a "strong interest" in the confidentiality of the information requested in the Subpoenas given Tatneft's purportedly "close ties" to Russia.  *See id.* at 12, 17 ("Ukraine has a strong interest in maintaining the confidentiality of information related to them—especially where, as discussed below, the information is sought by a party with close ties

---

[5]     Memorandum Opinion, Dkt. No. 75 at 11 ("This Court notes that Ukraine's claim that the information sought by Tatneft is sensitive and could be shared with the Russian Federation has not been substantiated in any way by Ukraine[,] [n]or does Ukraine explain why a confidentiality agreement or protective order could not resolve any confidentiality concerns."); Memorandum Opinion & Order, Dkt. No. 83 at 16-17 ("Ukraine's vague claims of invasion of privacy concerns and violation of secrecy laws are speculative . . . Ukraine has failed to provide any concrete evidence to support any alleged violation of privacy or secrecy laws.").

to a hostile state whose willingness to interfere with these activities is substantiated by its pattern of economic and physical aggression.").

On November 22, 2021, Judge Koeltl overruled all of Ukraine's objections and found, *inter alia*, that this Court had properly considered Ukraine's "asserted national interest in the confidentiality of sensitive information," and that this Court had not abused its discretion in finding that Ukraine's concerns about disclosure to Russia were "not factually supported" and "too hypothetical to be given credence."[6]  *See* Memorandum Opinion and Order, ECF No. 25, at 11-13 (Nov. 22, 2021).[7]  Judge Koeltl "agree[d]" that "the various interests asserted by Ukraine could be handled with an appropriate protective order" and that Ukraine had not credibly argued that Tatneft could or would disclose sensitive information to the Russian Federation.  *Id.* at 13-14, 16.  Judge Koeltl referred the proceeding back to this Court "for consideration of an appropriate protective order."  *Id.* at 16.  On November 23, 2021, this Court directed the parties to meet and confer on an appropriate protective order to govern the financial institutions' production of documents and to notify the Court by December 3, 2021, if the parties were unable to reach agreement.  *See* Order, ECF No. 26.

On November 29, having not heard from Ukraine, Tatneft reached out to Ukraine's counsel to discuss the terms of a protective order and requested that Ukraine provide a draft

---

[6]    Following this Court's decision and Judge Koeltl's rejection of Ukraine's objections, and given Ukraine's continued attempts to delay satisfaction of the Judgment, in January 2022 Tatneft issued the same subpoena this Court has previously reviewed to additional financial institutions not previously served.  Ukraine has served its objections to those additional non-party subpoenas to Tatneft.  *See* Ex. 1 (Letter from M. Kostytska to Jonathan I. Blackman and Nowell Bamberger); Ex. 2 (Letter from M. Kostytska to Lauren K. Handelsman and Sarah A. Dowd).  The Court's ruling on the present motion should logically extend to these subpoenas as well.

[7]    The Order was subsequently amended in Amended Memorandum Opinion and Order, ECF No. 27 (Nov. 26, 2021), with no substantive impact on any of the court's findings, including those quoted here.

protective order for Tatneft's consideration.  Ukraine did not respond to this proposal, and rather than send a proposed form of order for Tatneft's consideration, Ukraine sent a "term sheet" or outline for a draft of protective order that still had to be converted into an actual form of stipulated order, and whose terms sought to re-litigate scope of discovery issues that had already been decided against Ukraine by this Court and by Judge Koeltl.  *See* ECF No. 29-2.[8]  In the interest of moving the process forward, on December 1, 2021, Tatneft provided Ukraine with Tatneft's proposed protective order that incorporated reasonable and customary confidentiality protections, including relevant provisions from Ukraine's "term sheet."  ECF No. 29-3.  Ukraine rejected Tatneft's proposal on December 3, 2021, without providing any specific objections or suggestions as to how the draft could be amended to be acceptable to Ukraine.  *See* ECF No. 29-4.

In accordance with the Court's November 23 order, *see* ECF No. 26, the parties submitted letters proposing alternative briefing schedules for Ukraine's motion for protective order.  *See* ECF Nos. 30, 31.  On December 10, 2021, the Court directed Ukraine to file its proposed order and supporting brief by January 21, 2022, Tatneft to respond by February 4, 2022, with no reply from Ukraine.  *See* Order, ECF No. 32.

On January 21, 2022, Ukraine filed the instant Motion for Protective Order.  *See* ECF No. 34.  Simultaneously, Ukraine filed a near-identical motion for protective order in the parallel D.C. District Court action.  *See* Dkt. No. 91-1.  In its opinion denying Ukraine's request to

---

[8]     For example, the term sheet proposed forbidding any disclosure or discovery of nonpublic information relating to certain of Ukraine's state-controlled entities, *see* ECF No. 29-2 at 3, which Ukraine has no standing to assert and is otherwise contravened by the Court's order. *See* Order, ECF No. 16 at 9, 12.  It also sought to impose unreasonably burdensome restrictions on who may access disclosed documents, including allowing Ukraine to conduct "background checks" on *any* person to whom discovery material that Ukraine considers classified is disclosed. *See* ECF No. 29-2 at 4.

postpone document production pending decision of that motion, attached as Exhibit 3, the D.C. District Court rejected Ukraine's arguments that the threat of a "leak" of information to Russia warrant delaying its court-ordered February 3, 2022 production and response obligations in that proceeding.  Judge Kollar-Kotelly noted that "while Ukraine reiterates its concerns that disclosure of seemingly any and all information relevant to enforcement of the Judgment will somehow provide the Russian Federation with insight into Ukraine's defense capabilities and jeopardize Ukraine, it continues to provide this Court with nothing more than generalized assumptions."  Memorandum Opinion & Order, Ex. 3 at 2.

## ARGUMENT

### I. TATNEFT'S PROPOSED PROTECTIVE ORDER ADEQUATELY ADDRESSES ALL OF UKRAINE'S LEGITIMATE CONFIDENTIALITY CONCERNS

Tatneft's proposed form of protective order adequately addresses Ukraine's confidentiality concerns while preserving Tatneft's ability to timely receive and make use of the discovery the financial institutions are required to produce, and should be entered instead of Ukraine's proposed protective order.  The form of protective order that Tatneft proposed to Ukraine on December 1, 2021 was filed with the Court on December 3, 2021.  ECF No. 29-3. Accompanying this Opposition is a revised form of the December 1, 2021 proposal (the "Tatneft PO"); the only edits are proofreading edits and to adapt Ukraine's proposal regarding the procedures for the subpoena recipients to assign confidential designations to Ukrainian information, which would include (1) allowing the non-party financial institutions to designate all information as confidential unless their respective counsel have determined that the relevant materials are publicly available and to also provide a heighted designation to the extent

reasonable and (2) allowing those non-party institutions to consult with Ukraine about a higher

designation for documents if there is doubt about the proper designation.

Unlike Ukraine's proposed confidentiality scheme, the Tatneft PO includes standard

confidentiality provisions and, given Ukraine's concerns, establishes two tiers of confidential

information, including a higher tier, "Highly Confidential Information or Items," which

effectively serves as an Attorney's Eyes Only designation, restricting parties' access to

information so designated. *See* Tatneft PO at § 6.3.[9]  Both tiers include similar—and in some

cases, more extensive—protections to those in the protective order samples cited by Ukraine,

with a higher Attorney's Eyes Only or Highly Confidential tier (if provided) typically limiting a

*party's* access to disclosed materials, but otherwise allowing access by their counsel, the court,

and other persons involved in the litigation like experts, stenographers, consultants, and

witnesses. *See, e.g.*, Stipulated Protective Order § 11, *NML Cap., Ltd. v. Republic of Argentina*,

No. 06-cv-6466 (S.D.N.Y. Sept. 11, 2008), Dkt. No. 46 (permitting access to "Highly

Confidential" information by *inter alia* "three current employees, officers, partners or directors"

of the parties to the action).  The Tatneft PO also includes a provision allowing Ukraine to re-

designate produced materials to the "Highly Confidential" tier by written notice to all parties, if

---

[9]     Ukraine misrepresents that the Tatneft PO would allow disclosure of "Highly
Confidential Information" to witnesses or in-house counsel.  Motion for Protective Order, ECF
No. 34 at 15.  Section 6.3(g) of the Tatneft PO permits only *external* counsel to access
information necessary to prepare and examine witnesses, and Sections 6.3(f) and (g) would
extend access to Tatneft in-house counsel, deponents, or witnesses only if *Ukraine* chose to
depose a Tatneft witness or testimony from a Tatneft witness was necessary for enforcement
purposes.  *See* Tatneft PO at §§ 6.3(f), (g).  Inasmuch as Ukraine's proposed protective order
does not contemplate any discovery *from* Tatneft, which would hardly be relevant in a
proceeding for post-judgment discovery in aid of execution, Ukraine's quibbling with Tatneft's
proposal is irrelevant and moot.

mistakenly produced by a subpoenaed non-party under a lower designation.  *See* Tatneft PO at § 4.4.

Similarly, the proposed "Confidential" tier matches that proposed by Ukraine, allowing access to confidential information by the parties, their counsel, the court, and other persons involved in the litigation like experts, stenographers, consultants, and witnesses.  *See, e.g.*, (Consent) Protective Order § 1, *Flatow v. Iran*, No. 97-cv-00396 (D.D.C. Mar. 15, 2001), Dkt. No. 162; Protective Order § 5, *Owens v. Sudan*, No. 01-cv-02244 (D.D.C. July 8, 2019), Dkt. No. 436; Stipulated Protective Order §§ 10, 11, *NML Cap., Ltd. v. Republic of Argentina*, No. 06-cv-6466 (S.D.N.Y. Sept. 11, 2008), Dkt. No. 46.  Protective orders in other cases involving sovereign debtors have even included less restrictive provisions than those accepted by Tatneft.  *See, e.g.*, Agreed Confidentiality Order, *Liebovitch v. Iran*, No. 08-cv-01939 (N.D. Ill. Jan. 29, 2016), Dkt. No. 192.

Ukraine argues that an appropriate order should prohibit disclosure of confidential information to Russia or its agents.  *See* Motion for Protective Order, ECF No. 34 at 19-21.  That is reasonable, and the Tatneft PO does that: while not referring explicitly to Russia or its agents, the Tatneft PO restricts disclosure to *any* unrelated non-parties—which would obviously include Russia or anyone acting as its agent—and largely mirrors the limitations on disclosure for confidential information provided in Ukraine's proposed order.  *Compare* Tatneft PO at §§ 6.2, 6.3, *with* ECF No. 33-1 at § 6.5.  Further, Tatneft's limitations on disclosure for highly confidential information more closely resemble those of the samples cited by Ukraine than do Ukraine's equivalent designation.  *Compare* Tatneft PO § 6.3, *with* Stipulated Protective Order §§ 10, 11, *NML Cap., Ltd. v. Republic of Argentina*, No. 06-cv-6466 (S.D.N.Y. Sept. 11, 2008), Dkt. No. 46; ECF No. 33-1 at §§ 6.2-6.4.

Ukraine's contention that "Tatneft['s] . . . position during meet-and-confer that Confidential Information should be defined to account only for the interests of the Producing Party (that is, the subpoena recipient) . . . is contrary to the District Court's instruction that the protective order should account for Ukraine's interests" is incorrect.  Motion for Protective Order, ECF No. 34 at 19.  The Tatneft PO allows the Producing Party to take account, and avoid violations, of "its privacy or confidentiality obligations to others"—including, of course, Ukraine itself—thus accounting for the legitimate interests that Ukraine claims would be unprotected.[10] Tatneft PO at § 1.3.  Further, because all documents will be provided a default confidentiality designation and Ukraine will be able to consult about a higher confidentiality designation, Ukraine should not be concerned that its interests will not be protected.  The Tatneft PO therefore serves the needs of this case.

## II.   UKRAINE FAILS TO SHOW "GOOD CAUSE" FOR ENTRY OF ITS PROPOSED PROTECTIVE ORDER, WHICH SEEKS UNDULY RESTRICTIVE AND UNNECCESSARY PROVISIONS

This Court should not enter Ukraine's proposed protective order because it contains unwarranted limitations on what the subpoenaed financial institutions will produce and who can access that information.  Ukraine has not established "good cause" for the additional protections it demands in its proposed protective order, which go beyond the reasonable and necessary protections already provided for in the Tatneft PO.  *See* 3 Bus. & Com. Litig. Fed. Cts. § 29:11 (5th ed.) (noting that "the most typical practice is to designate documents as 'confidential,' 'highly confidential," and *sometimes even* 'attorneys' eyes only'," and that courts have been

---

[10]   Of course, a court-approved subpoena overrides normal customer confidentiality when a bank is served with such a subpoena for its customer's account or other information; otherwise, asset discovery from non-party financial institutions in aid of execution would essentially be futile.

"wary" of such designations due to the impact on the attorney-client relationship.) (emphasis added).

Under Federal Rule of Civil Procedure 26(c)(1), a protective order may be entered upon a showing of "good cause" made by the party seeking entry of the order.  Whether a movant has shown "good cause" is a "factual matter to be determined from the nature and character of the information sought . . . weighed in the balance of the factual issues involved in each action." Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2035 (3d ed. 2002) (internal citation omitted).  To overcome the "presumption of public access" afforded to judicial documents, "good cause" requires a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  *Id.*; *see also In re Agent Orange Prod. Liab. Litig.,* 821 F.2d 139, 146 (2d Cir. 1987); *Application of Akron Beacon J.,* No. 94 Civ. 1402 (CSH), 1995 WL 234710, at *10 (S.D.N.Y. Apr. 20, 1995) (quoting *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986)); *Alfadda v. Fenn,* 149 F.R.D. 28, 34 (S.D.N.Y. 1993) (collecting cases); *Pitsiladi v. Guerrero,* No. 07 Civ. 6605(JGK)(JCF), 2008 WL 5454234, at *2 (S.D.N.Y. Dec. 30, 2008) (good cause exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury") (quoting *In re Terrorist Attacks on September 11, 2001,* 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006)); *Playskool, Inc. v. Famus Corp.*, No. 80 Civ. 6723, 1981 WL 40562, at *12 (S.D.N.Y. July 15, 1981) ("Defendants cannot simply allege, in conclusory terms, that their customer lists are 'especially sensitive.' . . . Indeed, they have not even specifically identified some of the information which they seek to protect.").

### A.   There Is No "Good Cause" For Ukraine's Proposed Restrictions On So-Called "Classified" Information Or To Restrict "Attorneys Eyes Only" Information To Two Tatneft Outside Counsel

*First*, there is no "good cause" to approve Ukraine's proposed "Classified Information" confidentiality designation.  Ukraine has utterly failed to support the implausible idea that non-

party commercial institutions would be in receipt of Ukrainian "Classified Information" that in fact implicates Ukraine's "state secrets."  At the same time, Ukraine's proposed definitions of "Classified Information" and "state secrets" would give Ukraine unfettered discretion to direct the subpoena recipients to designate much, if not all, discovery material under this overly restrictive category, and then block all of Tatneft's lawyers from reviewing the documents so designated.[11]  Ukraine also asks this Court to permit it to deny access to those documents unless and until Tatneft's counsel passes background checks conducted by Ukraine, as even the lawyers of record would not presently qualify.  Ukraine's proposal risks delaying indefinitely Tatneft's counsel ever seeing those documents, as long as some Ukrainian representative objects.

Ukraine defines "Classified Information" to include "non-public governmental, regulatory, diplomatic, or consular information that . . . satisfies the criteria for state secrets under Ukrainian law."  *See* ECF No. 33-1 at § 1.7.  Ukraine then defines "state secrets" to cover nearly every aspect of the work of the Ukrainian government, including "information in the field of . . . *economics* . . . the disclosure of which may cause damage to the national security of

---

[11]     By nature of their being supposedly "state secrets," the subpoenaed financial institutions themselves would never know in advance what information Ukraine would consider to be "Classified Information" or "Classified Defense Information," either under Ukrainian law or, in Ukraine's view, even absent a formal designation under Ukrainian law.  Accordingly, the producing parties would be likely to turn to Ukraine to designate materials before disclosure, under Section 4.2 of Ukraine's proposed protective order.  In the event they did not, Ukraine, under its proposed order, would still retain unilateral power to increase the confidentiality designation of any material produced pursuant to the subpoenas, simply by "notify[ing] all Parties, in writing, of the error."  ECF No. 33-1 at § 4.4.  And after such notice, "the material will be treated according to the changed designation."  *Id.*  Any challenge to Ukraine's designations would then involve a presumably unproductive meet and confer process, given Ukraine's history of resistance to enforcement of the award, *see* Order, ECF No. 16 at 3, and what would likely be repeated conferences with this Court.  ECF No. 33-1 at §§ 5.2, 5.3.  In short, the procedure Ukraine proposes would virtually guarantee that it would be able to block production of any document it wanted simply by its own heightened confidentiality designation, thereby assuring further motion practice over each and every document.

Ukraine, and which is recognized in the manner prescribed by this Law, as a state secret and subject to state protection."  Motion for Protective Order, ECF No. 34 at 12 (emphasis added). This overbreadth is exacerbated by the fact that, under its form of protective order, there are no checks against Ukraine unilaterally deciding to assign this confidentiality category designation to information that has not even been formally designated by Ukraine as a state secret.  *See id.* at 13 ("Similarly, there is good cause in this case to treat as a state secret all information requested by Tatneft that has been formally designated a state secret *or that qualifies for such a designation although it has not yet been formally made*.") (emphasis added).

There is no "good cause" basis for providing Ukraine with such unilateral and broad discretion to include in this restrictive category information about economic or financial matters at the core of this post-judgment asset discovery search and the only information sought from the non-party financial institutions at all.  *See Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) ("The order is so loose that it amounts, as we suggested at the outset, to giving each party carte blanche to decide what portions of the record shall be kept secret.  Such an order is invalid."); *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kansas 2000) ("[T]he proposed protective order would protect any document defendant 'reasonably contends contain proprietary and confidential information'" and "defendants could unilaterally choose to designate any such document as 'confidential.'  By failing to identify specific documents or types of documents to be protected within the proposed protective order, defendant fails to meet the good cause standard.").

Moreover, Ukraine's "Classified Information" designation is all the more inappropriate due to the restrictions it seeks to place on who of Tatneft's external counsel may view "Classified Information," *see* ECF No. 33-1 at § 6.3, an extraordinary request that Ukraine

utterly fails to justify.  For materials so designated, Ukraine proposes disclosure be permitted

only to attorneys for Tatneft who have submitted to and passed a background check conducted

by Ukraine or its designee.  *Id.*  This restriction could create interminable delay or deny access

altogether, as Ukraine either protracts the background check process or rejects each of Tatneft's

counsel.

Ukraine provides no "good cause" to justify these intrusive attorney background

checks.[12]  Ukraine asserts without any basis that the Russian Federation might obtain

confidential information from Tatneft's U.S. counsel.  *See, e.g.*, Motion for Protective Order,

ECF No. 34 at 5, 9-10 (asserting that Russia may "obtain information from a Russian company

or a U.S. law firm using positive incentives, negative incentives, or cyber-attacks").  Ukraine's

allegation that Tatneft's New York attorneys, all of whom had to undergo character and fitness

checks to be admitted to the bar, might willfully disclose confidential information to the Russian

Federation based on "incentives" or for any other reason is offensive.  To the extent Ukraine is

concerned with cyber-attacks, Ukraine has made no showing that Tatneft's counsel firms, which

regularly safeguard highly confidential information belonging to both clients and adversaries, are

more vulnerable to cyber-attacks than any of the financial institutions to which Ukraine entrusts

its purportedly confidential information, or indeed any other sophisticated holder of confidential

---

[12]    *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93 (2d Cir. 2008), which
Ukraine cites for the proposition that courts have "authority to limit access to classified
information to persons with a security clearance," Motion for Protective Order, ECF No. 34 at
13, is completely inapposite.  The court in that case limited access to those with a security
clearance because it implicated the federal Classified Information Procedures Act (CIPA), which
"imposes upon district courts a mandatory duty to guard against the unauthorized 'disclosure of
any classified material disclosed by the *United States* to any defendant in any *criminal case*.'"  *In
re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d at 121 (quoting 18 U.S.C. app. 3 at
§ 3) (emphasis added).  The discovery sought here is not from the United States, and this is not a
criminal case implicating any information of the United States.

information in today's world.  Nor has Ukraine shown that it requires any of the employees at

these financial institutions to undergo the same intrusive checks to be able to view its financial

information, which should presumably be the case if they do indeed safeguard "state secrets" as

Ukraine claims.

Ukraine also does not offer any precedent, nor is Tatneft aware of any, for allowing

counsel or its client to engage in an intrusive personal investigation of opposing counsel before

allowing them access to asset discovery from sovereign judgment debtors.  *See* Motion for

Protective Order, ECF No. 34 at 1; Protective Order, *Owens v. Sudan*, No. 01-cv-02244 (D.D.C.

July 8, 2019), Dkt. No. 436; Stipulated Protective Order, *NML Cap., Ltd. v. Republic of*

*Argentina*, No. 06-cv-6466 (S.D.N.Y. Sept. 11, 2008), Dkt. No. 46; (Consent) Protective Order,

*Flatow v. Iran*, No. 97-cv-00396 (D.D.C. Mar. 15, 2001), Dkt. No. 162; Protective Order, *Owens*

*v. Sudan*, No. 01-cv-02244 (D.D.C. June 17, 2010), Dkt. No. 184.[13]

Relatedly, for materials designated as "Attorneys Eyes Only Information,"[14] Ukraine

proposes disclosure only to Tatneft's counsel "authorized to access Classified Information" (*i.e.*,

who have passed the aforementioned background check) or "who *appeared* in the above-

---

[13]     Although the 2010 *Owens* protective order cited by Ukraine requires FBI clearance
before allowing a deposing attorney access to certain deponents, that case involved depositions
of several federal inmates convicted of terrorism-related crimes and who were subject to certain
special administrative measures "which restrict their access to the mail, media, the telephone,
and visitors because of a substantial risk that their communications or contacts with persons
could result in death or serious bodily injury to persons, or substantial damage to property that
would result in death or serious bodily injury to persons," Renewed Unopposed Motion for Entry
of Protective Order at 1-2, *Owens v. Sudan*, No. 01-cv-02244 (D.D.C. June 8, 2010), Dkt. No.
183, circumstances utterly inapposite here.

[14]     Under Ukraine's proposed protective order, "Attorneys Eyes Only Information" includes
"all Discovery Material that contains non-public business, commercial, financial, trade-secret,
personal, governmental, regulatory, diplomatic, consular, or national-security related information
that is entitled to a higher level of protection due to its heightened sensitivity."  ECF No. 33-1 at
§ 1.6.

captioned case prior to January 21, 2022" (*i.e.*, Lauren Handelsman and Travis Gonyou at Binder & Schwartz). *See* ECF No. 33-1 at § 6.4 (emphasis added).[15]  Ukraine's attempt to limit the attorneys who can view this information to only two individuals, a partner and an associate at Binder & Schwartz, is clearly unreasonable.[16]  Indeed, contrary to its proposed protective order, the model protective orders to which Ukraine refers include standard confidentiality designations which allow for disclosure to other attorneys within counsel of record's firm and the attorneys in any related collection proceedings, as well as paralegals, secretaries, and other support services. *See, e.g.*, Stipulated Protective Order § 11(b), *NML Cap., Ltd. v. Republic of Argentina*, No. 06-cv-6466 (S.D.N.Y. Sept. 11, 2008), Dkt. No. 46; Protective Order § 5(a), *Owens v. Sudan*, No. 01-cv-02244 (D.D.C. July 8, 2019), Dkt. No. 436; *see also Gillespie v. Charter Commc'ns,* 133 F. Supp. 3d 1195, 1201-202 (E.D. Mo. 2015) ("Requiring an attorneys' eyes only designation is a drastic remedy given its impact on the party entitled to the information . . . [it] should be reserved for only those rare instances in which it is truly justified and there is no other effective alternative.") (internal quotations omitted); 3 Bus. & Com. Litig. Fed. Cts. § 29:11 (5th ed.) (the "attorney's eyes only" designation "does allow for disclosure to other necessary parties like litigation support personnel [or] outside counsel of record").

Ukraine's third tier of "Classified Information" is thus unwarranted and should be rejected.  If the Court is inclined to enter a protective order based on Ukraine's proposal, the

---

[15]    This intention is clear when compared to Section 6.5 of Ukraine's proposed protective order, which contemplates disclosure of merely "Confidential Information" to "any attorneys and staff who work for a law firm of record in Enforcement Proceedings and are directly participating in that proceeding." *Id.* at § 6.5.

[16]    Furthermore, Ukraine's proposed limitation would prohibit *anyone* from Tatneft's counsel in the D.C. proceedings from viewing the information received from the Subpoenas at all—an unacceptable result given that this information is in aid of execution on the Judgment issued by that court.

"Classified Information" tier should be eliminated, and documents that are responsive should be produced as, at most, "Attorneys Eyes Only Information" and be available to each outside attorney and other firm personnel actively working on this matter.

**B.    There Is No "Good Cause" For Ukraine's Proposed Prohibition On Production Of Classified Defense Information**

*Second*, Ukraine's proposed protective order inappropriately seeks to provide it with the unilateral ability to prevent disclosure of materials that it designates within the overbroad category of "Classified Defense Information."[17]  *See* ECF No. 33-1 at § 6.2 ("Classified Defense Information shall not be disclosed in discovery.").  Ukraine defines "Classified Defense Information" to include "non-public information concerning Ukraine's military, defense, or intelligence or concerning key players in related industries, including but not limited to SC Ukroboronprom, SE Ukrkosmos, SE Ukrainian Aviation and Transport Enterprise, and State Aviation Enterprises Ukraine, that satisfies the criteria for state secrets under Ukrainian law and the disclosure of which would undermine the national security of Ukraine."  Motion for

---

[17]    Although Ukraine (correctly) does not raise any argument about withholding documents premised on Ukraine's bank secrecy laws, *see* Motion for Protective Order, ECF No. 34 at 9-12, it nonetheless submits to this Court the Declaration of Iryna Mudra, whose sole purpose appears to be to re-urge the argument that Ukraine's bank secrecy laws should operate to prohibit disclosure of the discovery requested by Tatneft.  *Cf. Alfadda*, 149 F.R.D. at 33 ("It is undisputed that this Court has the power to require Radwan to answer the questions posed by plaintiffs' counsel at the deposition, even if to do so would require Radwan to violate [foreign] law.").  However, the Mudra Declaration itself makes clear that the Ukrainian legal provisions cited apply only to *Ukrainian* banks, and offers no explanation as to why they should apply to the Subpoena recipients, none of which are Ukrainian entities.  *See, e.g.*, Mudra Decl., ECF No. 35 at ¶¶ 13-15 (noting that "Ukrainian bank secrecy law [] requires *Ukrainian banks* to safeguard and guarantee the secrecy of information about the bank accounts and transactions of the banks' customers" (emphasis added)).  Interestingly, the Mudra Declaration also notes that Ukrainian law provides an exception for disclosure of "bank secrecy pursuant to [Ukrainian] court decisions," and an exception for disclosures by the National Bank of Ukraine pursuant to "foreign court decisions," *id.* at ¶¶ 22, 22 n.14, contrary to the notion that disclosure of such information is unacceptably deleterious to Ukraine's national security interests.

Protective Order, ECF No. 34 at 7; ECF No. 33-1 at § 1.8.  Like its definition for "Classified

Information," Ukraine's definition of "Classified Defense Information" therefore implicates a

broad conception of "state secrets," and even the elusive concept of national security, to

inappropriately provide it with broad and unilateral discretion to make withholding

determinations.[18]

There is no "good cause" for allowing Ukraine to unilaterally impose such a broad

prohibition on disclosure.  Ukraine's only justification for this protective order provision is "a

serious threat of Russian invasion," Motion for Protective Order, ECF No. 34 at 9, an argument

that has been rejected by the D.C. District Court.  *See* Memorandum Opinion & Order, Ex. 3 at 2

("Ukraine reiterates its concerns that disclosure of seemingly any and all information relevant to

enforcement of the Judgment will somehow . . . jeopardize Ukraine[.]").[19]  This argument,

moreover, is moot if the materials concerned are protected under the attorney's eyes only-

equivalent designation under Tatneft's proposed protective order and, either way, relies entirely

---

[18]     Ukraine proposes that withholdings based on "Classified Defense Information" will be
accompanied by an affidavit explaining the basis for the designation.  ECF No. 33-1 at § 4.3(c).
This is entirely unsatisfactory.  The incorporation of such a provision does not remedy Ukraine's
failure to show good cause for withholding information in that category in the first place.  It also
is again a recipe for limitless motion practice that would essentially amount to "discovery about
discovery" relating to the accuracy of any such affidavit.

[19]     Despite attaching hundreds of pages of additional exhibits, Ukraine has offered no
evidence that discovery in aid of execution produced to Tatneft will subsequently be leaked to
the Russian government for purposes of invasion.  Instead, the declarations provided by Ukraine
either attempt to re-litigate issues already decided by this Court and the D.C. District Court,
including decisions related to the breadth of Tatneft's discovery requests, *see, e.g.*, Reznikov
Decl., ECF No. 37 at ¶ 7; Markarova Decl., ECF No. 36 at ¶ 5, and discovery related to state-
controlled entities, *see, e.g.*, Reznikov Decl, ECF No. 37 at ¶ 8; Mudra Decl., ECF No. 35 at ¶ 8,
or describe the Russia-Ukraine conflict, which is irrelevant to the pending proceedings.  *See, e.g.*,
Reznikov Decl., ECF No. 37 at ¶¶ 18-42; Markarova Decl., ECF No. 36 at ¶¶ 12-18.  Where
these declarations do address the risk of disclosure of information to Russia from either Tatneft
or its counsel, they offer only conclusory statements to that effect.  *See, e.g.*, Markarova Decl.,
ECF No. 36 at ¶¶ 9-10; Reznikov Decl., ECF No. 37 at ¶¶ 15-17.

on speculative and unsupported allegations that Tatneft's outside counsel might be induced to leak confidential information to Russia.[20]   *Compare* Motion for Protective Order, ECF No. 34 at 4-5 ("While Ukraine recognizes the determinations of the Arbitral Tribunal and this Court that Tatneft and Russia are legally distinct entities, Ukraine remains acutely concerned that the undisputedly close ties between Tatneft and the State will make it susceptible to a leak.") *with* Memorandum Opinion & Order, Ex. 3 at 2 (declining to extend discovery deadline based on Ukraine "continu[ing] to provide this Court with nothing more than generalized assumptions"); *cf. U.S. v. Int'l Bus. Machs. Corp.*, 453 F. Supp. 194, 195 (S.D.N.Y. 1977) (denying motion for protective order based on concerns that were "merely speculative").

Ukraine's purported justification is even weaker where, as here, there is no reason to believe that classified military state secrets would somehow be entrusted to the private financial institutions subject to Tatneft's Subpoenas.  Neither do Tatneft's discovery requests explicitly seek information that would be considered secret military information.  *See* Order, ECF No. 16 at 9 ("[Tatneft] seeks only seven categories of documents with no subparts.  All of these relate to accounts, wire transfers, and securities and bond offerings that may be connected to Ukraine.").  At most, any information for which Ukraine seeks to prevent disclosure could be produced *in camera* for the Court's review, and the Court could then assess whether Ukraine's "Classified Defense Information" designation has been made in good faith, while production of other responsive materials continues by the subpoenaed entities.

---

[20]      In its Motion, Ukraine reiterates arguments that have *already* been rejected by this Court as "non-specific and unsupported," Order, ECF No. 16 at 11, as well as the D.C. District Court for similar reasons.  *See* Memorandum Opinion & Order, Ex. 3 at 2 (finding that Ukraine fails to substantiate its arguments); Memorandum Opinion & Order, Dkt. No. 83 at 16-17 (finding Ukraine's arguments to be "speculative" and "flimsy at best").  *Compare* ECF No. 12 at 7, *with* Motion for Protective Order, ECF No. 34 at 2-3.

Ukraine's suggestion that it should be able to prevent disclosure of documents relating to "key players in related industries, including but not limited to SC Ukroboronprom, SE Ukrkosmos, SE Ukrainian Aviation and Transport Enterprise, and State Aviation Enterprises Ukraine," Motion for Protective Order, ECF No. 34 at 7, is similarly baseless. This provision should be rejected as an improper attempt to assert standing with respect to discovery requests aimed at entities that Ukraine claims are "undisputed[ly]" "legally distinct from the Government of Ukraine." *Id.* at 16 n.9. As this Court has already observed, Ukraine cannot have it both ways: "If these entities are truly independent from Ukraine, then they will have no proprietary Ukrainian information. Without this proprietary interest, Ukraine cannot challenge the subpoenas [for lack of standing] on relevance grounds." Order, ECF No. 16 at 6. In any case, these entities are among the 19 "Identified State Controlled Entities" deemed discoverable by this Court in its Order, *id.* at 9, and were included in Tatneft's discovery requests because they may engage in international transactions on behalf of Ukraine, which could result in persons owing money to these entities that would constitute Ukrainian property subject to attachment. Accordingly, there is no basis to revisit the Court's prior order denying Ukraine's motion to quash.

### C.   There Is No "Good Cause" To Restrict Use Of Discovery Materials To Enforcement Of The Judgment Only In The United States

*Finally*, Ukraine seeks to limit use of any materials produced to enforce the D.C. District Court's Judgment, and not the underlying final arbitral award or any foreign judgments also enforcing the award and awarding Tatneft costs and fees. *See* Motion for Protective Order, ECF No. 34 at 21-22. By contrast, the Tatneft PO limits the use of discovery materials "to enforce the Final Award or any judgment thereon or related thereto; for prosecuting, defending, or attempting to settle this proceeding or related proceedings; appealing from any order or

judgment entered in this proceeding; or obtaining insurance coverage or indemnification relating to this proceeding."  Tatneft PO at § 6.1.[21]  Ukraine asserts that such use of discovery material goes beyond the scope of Rule 69.  *See* Motion for Protective Order, ECF No. 34 at 21-22.

Ukraine has no basis for its assertion or its proposed narrow limitation on the use of the discovery materials obtained in this proceeding.  The "worldwide" asset discovery for sovereign debtors authorized under Rule 69 and *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014), necessarily contemplates that such discovery could then be used to pursue assets outside the United States, relying on related foreign judgments.  *See id.* at 137 (noting that NML pursued discovery in order to identify assets that might be subject to attachment and execution "whether under [United States law] or the law of foreign jurisdictions"); *see also EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 208 (2d Cir. 2012) ("Nor is it unusual for the judgment creditor to seek disclosure related to assets held outside the jurisdiction of the court where the discovery request is made.").

There are numerous examples of protective orders in cases involving sovereign debtors that include provisions similar to those Tatneft's proposes, including one that Ukraine itself cites.  *See, e.g.*, Stipulated Protective Order, *NML Cap., Ltd. v. Republic of Argentina*, No. 06-cv-6466 (S.D.N.Y. Sept. 11, 2008), Dkt. No. 46 (defining "Permitted-Use Actions" as including "proceedings in this or any other jurisdiction to enforce the judgments that Plaintiffs have or obtain in the future against the Republic of Argentina (the 'Republic') relating to debt obligations upon which the Republic defaulted in 2001."); Stipulated Protective Order, *BCB*

---

[21]     The Tatneft PO further provides that "Protected Material may not be used for any other purpose, including, without limitation, any business or commercial purpose."  Tatneft PO at § 6.1.

*Holdings Ltd. v. Gov't of Belize*, No. 14-cv-01123-CKK (D.D.C. Oct. 31, 2017), Dkt. No. 74

(restricting use to "this Proceeding and any related proceedings to enforce the judgment in this

Proceeding or the arbitration award underlying the judgment in this Proceeding . . . .").

Ukraine's proposed territorial limitation is improper and unwarranted.

## CONCLUSION

For the reasons above, Tatneft respectfully requests that this Court deny Ukraine's

Motion for Protective Order and instead enter Tatneft's proposed form of order.


Dated:    February 4, 2022
          New York, New York

                                    Respectfully submitted,

                                    **BINDER & SCHWARTZ LLP**


                                     /s/ Lauren K. Handelsman

                                    Lauren K. Handelsman
                                    Travis A. Gonyou
                                    366 Madison Avenue, Sixth Floor
                                    New York, New York 10017
                                    Tel: (212) 510-7008
                                    Fax: (212) 510-7299
                                    lhandelsman@binderschwartz.com
                                    tgonyou@binderschwartz.com

                                    *Attorneys for Petitioner PAO Tatneft*