UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UKRAINE,<br><br>      *Petitioner*,<br><br> -against-<br><br>PAO TATNEFT,<br><br>      *Respondent*. | 21-mc-00376 (JGK)(SN)<br><br>22-mc-00036 (JGK) (SN) |

# PAO TATNEFT'S MEMORANDUM OF LAW
# IN RESPONSE TO STATEMENT OF INTEREST
# FILED OCTOBER 3, 2025, BY U.S. ATTORNEY'S OFFICE

                **SCHLAM STONE & DOLAN LLP**
                26 Broadway
                New York, NY 10004
                (212) 344-5400

                *Attorneys for Respondent-Judgment*
                *Creditor PAO Tatneft*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ....................................................................................................................................1

THE SOI CARRIES NO WEIGHT AND ALSO FAILS ON THE MERITS ................................1

    A. The USAO's Improper Vouching For Ukraine's Credibility Cannot Salvage Inaccurate, Conclusory, And Unsupported Assertions ....................................................2

    B. The USAO's Comity Argument Has Already Been Rejected In This Case ..................4

    C. The USAO's Arguments On The Scope Of Discovery Have Been Rejected By The Supreme Court, This Court, Judge Koeltl, And The DC Court .......................5

CONCLUSION ...............................................................................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Linde v. Arab Bank, PLC*,
   97 F.Supp.3d 287 (E.D.N.Y. 2015),
   *vacated on other grounds*, 882 F.3d 314 (2d Cir. 2018) .................................................................. 2

*NML Capital, Ltd. (EM Ltd.) v. Republic of Argentina,*
   695 F.3d 201 (2nd Cir. 2012) .................................................................................................. 6

*Peterson v. Islamic Rep, of Iran*,
   2013 WL 5538652 (S.D.N.Y. Oct. 8, 2013) ............................................................................ 5

*Pitts v. People*,
   2001 WL 410077 (S.D.N.Y. Apr. 23, 2001) ........................................................................... 3

*Republic of Argentina v. NML Cap., Ltd.,*
   573 U.S. 134 (2014) ............................................................................................................ 5, 6

*Republic of Austria v. Altmann*,
   541 U.S. 677 (2004) ............................................................................................................ 1, 2

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
   482 U.S. 522 (1987) ............................................................................................................ 4, 5

*U.S. v. Williams*,
   690 F.3d 70 (2d Cir. 2012) ...................................................................................................... 3

*Von Saher v. Norton Simon Museum of Art*,
   754 F.3d 712 (9th Cir. 2014) ................................................................................................... 2

Tatneft respectfully submits this response to the Statement of Interest (the "Statement" or "SOI") filed by the U.S. Attorney's Office ("USAO") on October 3, 2025. Tatneft's Response to the USAO's December 2024 SOI (ECF Nos. 105-106-1) is incorporated by reference.[1]

## PRELIMINARY STATEMENT

For the second time, the USAO has filed a Statement of Interest that improperly seeks to bolster Ukraine's legal arguments and vouch for declarations too speculative and conclusory to stand on their own. Like the December 2024 Statement of Interest, the new SOI does not claim that Tatneft's pursuit of its subpoenas will have any impact on U.S. foreign relations and thus can make no claim to being owed deference by this (or any) Court. Nor does the USAO acknowledge Tatneft's unrebutted evidence demonstrating Tatneft's independence from the Russian government, much less offer any opposing evidence. Undeterred by facts, the USAO goes all in with Ukraine's litigation techniques to baldly assert that Tatneft is "controlled by" the Kremlin. SOI at 13. That the Justice Department would think it wise to throw its weight behind this libel is disappointing. But the approach no more supports limiting discovery in ways contrary to law when advanced by the USAO than by Ukraine.

This Court, Judge Koeltl, the D.C. Court, and the Supreme Court have all rejected the USAO's inappropriate legal arguments on behalf of Ukraine. The SOI offers no reason to depart from those rulings.

## ARGUMENT

### THE SOI CARRIES NO WEIGHT AND ALSO FAILS ON THE MERITS

A Statement of Interest may be entitled to some measure of deference where it articulates "the considered judgment of the Executive on a particular question of foreign policy." *Republic*

---

[1] All ECF cites are to case 21-mc-00376 unless otherwise indicated.

*of Austria v. Altmann*, 541 U.S. 677, 701–02 (2004). Such deference is rooted in the Executive's responsibility for, and expertise in "the conduct of our foreign relations." *Id*. at 702 & n.2.

That principal has no application here since the SOI does not identify any arguable effect of the bank subpoenas on any question of U.S. foreign policy or foreign relations. *See also* Tatneft's brief in response to December 2024 SOI, ECF No. 105, at 1-2 (collecting cases). The government's views on questions of statutory interpretation, the application of case law, and other legal interpretations "merit no special deference," as they are "well within the province of the judiciary." *Altmann*, 541 U.S. at 701 (rejecting United States' "interpretation the [Foreign Sovereign Immunities Act's] reach"); *see also Linde v. Arab Bank, PLC*, 97 F.Supp.3d 287, 320 (E.D.N.Y. 2015), (no deference owed "Solicitor General's brief [which] appears to go beyond merely explaining the foreign policy implications of the [discovery sanctions order], and offers its own analysis of how the various comity factors should have been weighed"), *vacated on other grounds*, 882 F.3d 314 (2d Cir. 2018); ECF No. 105, at 2-3.

Nor may a court rely on the government's characterization of facts at odds with the record, as though it is engaged in factfinding. *See Von Saher v. Norton Simon Museum of Art*, 754 F.3d 712, 724 (9th Cir. 2014) (Solicitor General's argument "makes us wary of giving too much credence to [its] brief because [the brief] demonstrates that the Solicitor General goes beyond explaining federal foreign policy and appears to make factual determinations").

    **A.    The USAO's Improper Vouching For Ukraine's Credibility Cannot Salvage Inaccurate, Conclusory, And Unsupported Assertions**

Like the December 2024 SOI, the new SOI reports that it finds Ukraine's concerns "credible," and repeats Ukraine's incantation of Tatneft's supposed "close ties to the Russian government." SOI at 4; *see also, e.g., id.* at 7 ("Ukraine has credibly asserted"). The USAO's

2

attempt to bolster Ukraine by crediting its assertions is improper for the same reason such vouching is barred in a criminal trial:

> Attorney statements vouching for the credibility of witnesses are generally improper because they imply the existence of evidence not placed before the jury and because prosecutorial vouching carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*U.S. v. Williams*, 690 F.3d 70, 76 (2d Cir. 2012) (cleaned up); *see also Pitts v. People*, No. 00-cv-5505 (GEL), 2001 WL 410077, at *3 (S.D.N.Y. Apr. 23, 2001) ("The evil of vouching inheres in the prosecutor's placing her own, and the government's, credibility behind the witness . . . ."). As in the December 2024 SOI, the USAO simply asserts that it finds Ukraine's statements "credible," offering no supporting evidence and no reason to think any such evidence exists.

Beyond the impropriety of the approach, the USAO's vouching for Ukraine's references to Tatneft's supposed "close ties" to the Kremlin is at odds with the evidence before the Court. The USAO ignores that the United States has never included Tatneft itself (unlike some other Russian oil companies) in its wide-ranging sanctions. November 2024 Declaration of Nail Ulfatovich Maganov Decl. ("Maganov Decl.") ¶ 15, ECF No. 127-20. The USAO ignores Tatneft's uncontroverted evidence that the Russian government has no role in Tatneft's operations, does not control Tatneft, and has no right to commandeer Tatneft oil or other products. *Id*. ¶¶ 11, 13. Tatneft has no responsibility to finance Russian military projects or obligation to provide non-public information to the Kremlin. *Id.* ¶¶ 11, 12. The USAO ignores Tatneft's evidence refuting Ukraine's unsupported, non-personal knowledge-based claim that Tatneft supplies the Russian army. Maganov August 2025 Decl. ¶ 5, ECF No. 126 (correcting Lytvynenko Declaration vouched for by USAO, *see* SOI at 7, to explain that the "Russian army has a policy of purchasing petroleum products from certain suppliers . . . and Tatneft is not one

3

of them"). And no amount of vouching for the Makarova Declaration, *see* SOI at 6-7, can elevate the cited paragraphs when they (or their innuendo) have either been refuted by the first Maganov Declaration, ECF No. 127-20 (¶¶ 19, 21, 23, 25); rest on guilt by association or ad hominem attacks (¶¶ 20, 23, 26, 27); or assert mere conclusions and irrelevancies (¶¶ 23, 24, 28, 29).

In the same vein, no amount of quoting from Ukraine's declarations, *see* SOI at 6, can elevate conclusory assertions and speculation about categories of documents that may or may not exist in commercial bank files into a showing of "clearly defined, specific and serious injury" necessary to limit the subpoenas. Order Denying Motion To Quash, at 10 (cleaned up). If commercial bank records contain sensitive information bearing on Ukraine's security or U.S. agencies and contractors who "may" be identified, SOI at 6—information that is not confidential enough to keep from unrelated private corporations but too confidential to disclose under a confidentiality order—the USAO would have presented some shred of supporting evidence.

### B. The USAO's Comity Argument Has Already Been Rejected In This Case

The USAO's reference to comity and foreign relations concerns merely rehashes the same argument this Court already rejected in denying Ukraine's motion to quash the First Subpoenas. ECF No. 16 at 11–15 ("the doctrine of international comity does not bar these subpoenas"). The district court agreed. ECF No. 27 at 14–15 (comity "does not mean that courts must take a foreign state's claims at face value or accept unsupported claims" and citing cases rejecting such arguments "by foreign states in the discovery context"). The USAO does not acknowledge these rulings or point to anything that would merit departing from them.

The USAO's lengthy quotation from *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987), provides no support for its argument. At issue there was application of Hague Convention on the Taking of Evidence Abroad in Civil or

4

Commercial Matters, which "prescribes certain procedures by which a judicial authority in one contracting state may request evidence located in another contracting state." *Id.* That Convention has no relevance here when the subpoenas were served on domestic banks and do not request evidence located in another nation. As Tatneft's opposition to the motions to quash ("Opposition") explained, *Peterson v. Islamic Rep, of Iran*, 2013 WL 5538652 (S.D.N.Y. Oct. 8, 2013), SOI at 8, was superseded on the cited point by *NML Capital*. ECF No. 125 at 16 n.3.

### C. The USAO's Arguments On The Scope Of Discovery Have Been Rejected By The Supreme Court, This Court, Judge Koeltl, And The DC Court

As shown above and previously, the USAO's opinions parroting and expanding Ukraine's arguments for how the case law should apply to Tatneft's subpoenas carry no weight. On the merits, moreover, each of those arguments for limiting discovery has been rejected by this Court, Judge Koeltl, and/or the DC Court as at odds with controlling law or otherwise incorrect. The USAO is either misinformed or hubristic in briefing these issues as if those rulings did not exist.

*Proportional to Needs of the Case*, SOI at 8. Order Denying Motion To Quash, at 9:

- The "scope of the information sought . . . is proportional to the need to satisfy a $172.9 million judgment," as (i) "[b]road post-judgment discovery from non-party banks is normal in this Circuit;" (ii) "only 19 'Identified State Controlled Entities' [ ] count as 'Ukraine;'" (iii) the subpoena "seeks only seven categories of documents with no subparts;" and (iv) it seeks information that "has the potential to reveal assets that might be available to satisfy the substantial judgment against Ukraine." ECF No. 16, at 9.

- Judge Koeltl's Order affirming, ECF No. 27, at 8-9 (Magistrate Judge's proportionality analysis "comfortably satisfies Rule 69").

The USAO declines to acknowledge these rulings or explain why they are wrong.

*State Controlled Entities*, SOI at 9-11. Order Denying Motion To Quash, at 9 & n.2:

- Tatneft's "definition of 'Ukraine'" to include its agencies, instrumentalities, and Identified State Controlled Entities, among others, is "otherwise reasonable."

- Judge Koeltl's Order affirming, ECF No. 27, at 9: "Nor was the Magistrate Judge's ruling on the relevance of the subpoenas contrary to law because she

5

- accepted the definition of 'Ukraine' to include the 19 agencies and instrumentalities."

- D.C. Court, ECF No. 127-5, at 18: "Discovery that relates to entities that are "legally separate" from a sovereign but which may "nevertheless hold attachable assets" or "may possess information about [a sovereign's] assets" was found by the court in *Amduso* to be 'well within the range of reasonable discovery . . . . Ukraine's questioning whether the state-controlled entities may ultimately be liable for the judgment is not relevant."

The USAO's proposal that an alter ego showing must be made before Tatneft may seek discovery about Ukraine's assets implicating state-owned entities does not exist in any case law. Tatneft's Opposition cites additional authorities showing that alter ego status or lack thereof does not bear on whether the requested discovery is within the scope of Rule 69. *See* ECF No. 125, at 17-21.

*Assets Immune From Execution*, SOI at 11. Judge Koeltl, ECF No. 27, at 10:

- "Ukraine's argument that the Magistrate Judge abused her discretion because Tatneft had not established the relevance of information about Ukrainian assets that are "presumptively immune from attachment and execution" is also rejected. . . . . Moreover, "[w]hether a particular sovereign asset is immune from attachment . . . does not affect discovery." *EM Ltd.*, 695 F.3d at 209. As in *EM Ltd.*, whatever hurdles Tatneft will face before attaching Ukraine's property, 'it need not satisfy the stringent requirements for attachment in order to simply receive information about [Ukraine's] assets.' *Id*. 4. This argument is therefore unpersuasive."

- D.C. Court, ECF No. 127-5, at 10: "The reality in this case is that Pao Tatneft does not know what property Ukraine has, where it is, or whether it is executable. . . . . While Ukraine makes conclusory allegations of potential immunity, this is insufficient to bar discovery of the existence and location of Ukraine's assets. Accordingly, Pao Tatneft may pursue discovery even if such discovery discloses information about assets that are eventually deemed immune from execution." *See also* full discussion, *id*. at 8-11.

The USAO declines to acknowledge these rulings or say why they are wrong. Tatneft's Opposition shows that the rulings are compelled by *NML Capital*. ECF No. 125, at 13-17.

## CONCLUSION

For the reasons set forth above the Statement of Interest lacks merit and is entitled to no weight. The Court should deny Ukraine's motions to quash.

Dated: New York, New York
October 13, 2025

Respectfully submitted,

**SCHLAM STONE & DOLAN LLP**

By:   */s/ Elizabeth Wolstein*
Elizabeth Wolstein
John Moore
Channing J. Turner
26 Broadway, 19th Floor
New York, New York 10004
Telephone: (212) 344-5400
ewolstein@schlamstone.com
jmoore@schlamstone.com

*Attorneys for Judgment Creditor
PAO Tatneft*

7