Elizabeth Wolstein
Partner

212-344-5400
ewolstein@schlamstone.com

Schlam Stone & Dolan LLP
26 Broadway, New York, NY 10004
Main: 212 344-5400 Fax: 212 344-7677
schlamstone.com

September 18, 2026

BY ECF FILING
Honorable Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re: Phase I Discovery in *Ukraine v. PAO Tatneft*, No. 21-mc-00376 (JGK) (SN)
**(FILED ONLY ON THIS DOCKET)**
*Ukraine v. Tatneft*, No. 22-mc-00036 (JGK) (SN)
*PAO Tatneft v. Ukraine*, No. 25-mc-00212 (JGK) (SN)
*In re: Subpoena to White & Case LLP,* No. 26-mc-00071 (JGK) (SN)
*In re: Subpoena to Quinn Emanuel Urquhart & Sullivan, LLP,* No. 26-mc-00072 (JGK) (SN)
*In re: Subpoena to Winston & Strawn LLP*, No. 26-mc-00076 (JGK) (SN)
*In re: Subpoena to Holland & Knight LLP*, No. 26-mc-00077 (JGK) (SN)

Dear Judge Netburn:

This firm represents judgment creditor PAO Tatneft ("Tatneft") in connection with enforcement of Tatneft's $172.9 million judgment against Ukraine. We write respectfully in accordance with the Court's September 14, 2026 order to advise the Court regarding the parties' positions on the Court's proposal to deny all pending motions without prejudice in favor of the parties filing consolidated motions addressing the relief they still seek.

Counsel for the parties participated in a telephonic meet and confer on Thursday September 17, 2026. Each party has separately drafted its own position statement, reflected below.

## I. TATNEFT'S POSITION

As an initial matter, Tatneft agrees that the list of motions in the Court's September 14, 2026 order is a complete list of the pending motions in this matter awaiting decision. Ukraine would add to that list two motions seeking protective orders limiting the scope of discovery (ECF No. 121 in 21-mc-00376 and ECF No. 91 in 22-mc-00036). Tatneft believes that the protective order agreed to by the parties and so-ordered by the Court resolves those two motions (ECF No. 154).[1] Ukraine now claims that it agreed to the protective order only to the extent that discovery remained confined to "Phase I." The order itself, however, says nothing of the sort. To the contrary, the Court explained its "intention to enter a *generally applicable* protective order that will govern *all materials* produced by the subpoenaed third parties" (ECF No. 144

[1] All docket references are to Case No. 21-mc-00376 (JK) (SN), unless otherwise specified.

at 4 (emphasis added)). In a subsequent order the Court rejected Ukraine's attempt to use the protective order to litigate the scope of discovery:

> The Court rejects Ukraine's attempt to include a provision that would broadly limit the scope of Tatneft's subpoenas. See Ukraine Proposed P.O. § III. As the Court explained in its prior Order, the Court will approve a "generally applicable protective order." March 20, 2026 Order. The scope of the third-party subpoenas, what materials should or should not be withheld, and which entities should or should not produce materials will be resolved by the Court on a case-by-case basis through the discovery stages and the challenge procedures outlined in the protective order. The Court will not broadly limit the scope of all of Tatneft's pending subpoenas through the protective order. This is in part the Court's view because even documents that may not be subject to attachment under the relevant laws, may lead to discovery of such assets.

(ECF No. 150, at 4). Attempting to reopen the protective order serves no purpose other than delay.

Tatneft does not object to the Court's suggestion that the pending motions be denied without prejudice and that the motions be updated and re-filed as consolidated omnibus motions. To the extent the Court directs that the motions proceed in this manner, Tatneft requests that it have sufficient time and space in its briefing to address arguments unique to each of the four law firms that currently appear in four distinct briefs, particularly given that each law firm is expected to file independent opposition papers to Tatneft's motions to compel. In the same vein, Tatneft requests sufficient time and expanded page limits to respond to distinct arguments that apply to the subpoenas Ukraine has moved to quash.

Tatneft believes that Ukraine's proposal for additional briefing (as described below) is more likely to multiply proceedings than to clarify and streamline the pending motion practice. Despite the Court asking simply for the parties' positions regarding the Court's suggestion for how to move forward procedurally (ECF No. 168), Ukraine includes an extended discussion aimed at limiting the scope of discovery. Tatneft does not understand that to be the purpose of this letter. Tatneft will be glad to address at the September 23 conference, as appropriate, the various arguments and assertions in Ukraine's portion of this and in any further briefing the court directs.

In addition, Tatneft intends to raise at the September 23 conference the fact that, despite having lifted the stay of discovery in these proceedings (ECF No. 108), the Court has maintained a *sua sponte* stay of all discovery in the proceedings outside of certain narrow (and, ultimately, unfruitful) discovery to which Ukraine consented (*see* ECF No. 114, 117, 153). Tatneft intends to ask the Court to lift the *sua sponte,* unconsented, and unbonded stay in these proceedings.

Finally, Tatneft will address the knowing falsehoods and misrepresentations in Ukraine's paragraph on the Lindsey Graham Act, added at 5 pm today, in a separate letter to the Court.

## II. UKRAINE'S POSITION

Ukraine cannot agree to the denial without prejudice of its pending motions unless Tatneft also agrees to the withdrawal of all of its subpoenas, something Tatneft has indicated that it is unwilling to do. Denying Ukraine's motions would multiply the procedural complexity that has resulted from Tatneft issuing new subpoenas even after the Court forbade it from "enforcing its subpoenas" until the Court rules. Dkt. 114.

Instead, Ukraine proposes that the parties be given leave to file 12-page supplemental briefs to: (1) explain how the pending motions can be addressed efficiently (they largely overlap, such that threshold rulings will resolve several motions at once and either resolve or narrow the issues presented by Tatneft's pending motions concerning Ukraine's law firms); and (2) address legally significant events that have occurred since the briefing was submitted.

As the Court's September 14, 2026 Order observes, there have been very significant developments since Ukraine's pending motions were filed.

Just this week, an overwhelming majority in both houses of Congress passed sweeping sanctions targeting Russia's energy sector, a sector that prominently includes Tatneft. *See* The Lindsey O. Graham Sanctioning Russia and Iran Act of 2026, §§ 105, 107, 108 (*available at https://www.congress.gov/bill/119th-congress/senate-bill/5025/text*). The purpose of these sanctions is to undermine the financial support for Russia's invasion, which comes largely from the energy sector. Among other transactions, the new law will prohibit "all transfer of funds involving the Russian Federation," including to companies "owned by the Government of the Russian Federation." *Id.*, § 105. As the United States explained, Russia is Tatneft's largest shareholder through Tatarstan, which is merely a region within Russia and not an independent state under the Russian constitution. Dkt. 103, p. 14. If signed by the President as expected, this new legislation may make it unlawful under United States law to transfer funds to Tatneft. It is already forbidden under Ukrainian law.

Since briefing was completed on Ukraine's pending motions, the United States filed Statements of Interest in this case and related cases in Washington, D.C. — the most recent of which was filed only last month — explaining that U.S. public policy strongly favors either (1) preventing all discovery or, at the very least, (2) circumscribing discovery in the way that Ukraine proposes in its pending motions. *See., e.g.,* Dkt. 165-1, pp. 16-21.

Recall that is a proceeding to enforce an arbitration award between a foreign company and a foreign state, a dispute that had no connection to the United States. This Court is only involved because of the New York Convention, which controls the circumstances under which United States courts will enforce foreign arbitration awards. Under that treaty,

**international arbitration awards are only enforced to the extent doing so comports with the public policy of the United States**. Convention on Recognition and Enforcement of Foreign Arbitral Awards, Art. V, ¶¶ 1(a), 2(b); 21 U.S.T. 2517 ("[E]nforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that… enforcement of the award would be contrary to the public policy of [the United States].")

In addition, there have been important developments in the first-party discovery proceedings pending in Washington, D.C., including orders (1) denying Tatneft's motion to lift a moratorium on discovery (bear in mind that almost all of the subpoenas in controversy here were issued out of that D.C. proceeding, not out of this Court); and (2) indicating a willingness to circumscribe discovery in light of Russia's invasion and the position of the United States.

In a typical enforcement action, discovery is self-limiting because the judgment holder has little incentive to seek information irrelevant to judgment enforcement. Here, however, a Russian oil company with deep Kremlin ties has every inventive to abuse the discovery process to obtain information of value to the Russian war effort.

Tellingly, Tatneft stubbornly insists on discovery into Ukraine's military assets and transactions. It refuses to focus on the vanishingly narrow category of assets potentially subject to attachment and seizure. This shows that judgment enforcement is a mere pretext. Tatneft's true purpose is to gather intelligence concerning Ukraine's defense, economy, trading partners, supporters, suppliers, and allies.

The enormous overbreadth of Tatneft's subpoenas is not cured by the protective order currently in place, which only prevents Tatneft from obtaining information that can be identified on its face as threatening national security. In reality, ordinary economic data takes on huge importance in the midst of a war in which the invader is determined to destroy Ukraine's economy and sabotage its suppliers and trading partners.

There is no question that the only assets that can be seized by this Court are those (1) owned by Ukraine itself (not its state-owned companies); (2) located in the United States; (3) that are not used for military, diplomatic, or central banking purposes are potentially subject to attachment and seizure. 28 U.S.C. §§ 1609-1611. Any such assets would also have to be used for a commercial activity in the United States to be seized. 28 U.S.C. §§ 1610. This is why, contrary to what Tatneft has long argued, the scope of discovery proposed by Ukraine is significantly *broader* than what might be seized. It includes everything that could *potentially* be seized.

While it is impossible to prove a negative, Ukraine's counsel is unaware of <u>any</u> asset or account of Ukraine that could be seized by this Court. There were few commercial contacts

between the government of Ukraine and the United States prior to the invasion, and likely none now. The fact that the arbitration award held by Tatneft is almost certainly unenforceable under federal law is no reason to give Tatneft sweeping discovery into assets and accounts that even it acknowledges are categorically immune.

This Court and others have often imposed strict limitations on the scope of judgment discovery against foreign sovereigns in light of the immunity of almost all foreign sovereign assets. Dkt. 120, pp. 11-14; Dkt. 131, pp. 4- 10. They did so even in the absence of the extremely important reasons to do so here.

In addition to the pending motions listed in Your Honor's September 14, 2026 Order, Ukraine's two motions seeking protective orders limiting the scope of discovery also remain pending. Dkt. 121 in 21-mc-00376 and Dkt. 91 in 22-mc-00036. In agreeing to the protective order currently in place, Ukraine made it clear that it only did so insofar as the scope of discovery remained cabined as in "Phase 1."

Ukraine's two, effectively identical, motions for protective order seek the same limitation on the scope of discovery sought in all of Ukraine's other pending motion. They are not, however, redundant of Ukraine's motions to quash and for reconsideration. They serve an important procedural function because they provide the Court with an avenue to address the scope issue in light of Russia's invasion and the declared public policy of the United States without having to directly revisit certain pre-invasion rulings concerning Tatneft's first tranche of bank subpoenas.

Respectfully,

*/s/ Elizabeth Wolstein*

Elizabeth Wolstein

cc: All counsel of record (by ECF)